586 A.2d 375

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Kenneth K. BURKHARDT, Appellant.**

Supreme Court of Pennsylvania.

Argued May 11, 1990.

Decided Feb. 4, 1991.

342

Peter T. Campana, Marc F. Lovecchio, Williamsport, for appellant.

Ralph A. Germack, Dist. Atty., for appellee.

Stuart Suss, Depty. Dist. Atty., for amicus—Chester Co. Dist. Atty.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

McDERMOTT, Justice.

The appellant and four accomplices left Maryland in a convoy of three automobiles. Their mission: theft of farm equipment in Juniata County, Pennsylvania. The appellant brought a shotgun. Before mission accomplished, the

thieves fell out, an argument between the appellant and accomplice, Bryan Conway, ended in appellant using the shotgun on Conway. Shot four times, Conway was left for dead and the rest fled, empty handed, back to their native Maryland. Conway survived. It was not long before the appellant was before the court in Juniata County charged with nine offenses.[1] He pled guilty to attempted murder and possession of an instrument of crime. He was sentenced to five (5) to ten (10) years on the attempted murder plea, and a consecutive term of two (2) to five (5) years on possession of the instrument of crime charge. The remaining seven charges pursuant to the plea bargain were *nol prossed.*

The plea agreement also addressed the effective run-date of the sentences and the fact that they would be served concurrent with a federal sentence then being served by appellant. The agreement, however, left to the discretion of the trial court the length of the minimum sentences and whether the state sentences should run consecutive or concurrent to each other. In its plea bargain colloquy with appellant, the court clearly and comprehensively advised appellant of the rights he was surrendering in the plea bargain and the full range of the potential sentences that could be imposed. Prior to formal entry of the guilty plea, appellant explicitly acknowledged that he understood his rights and the potential sentences. The trial court imposed the minimum and maximum sentences described above and ran them consecutive to each other. All of which was within the contemplation of the plea agreement, for which appellant received assurances that: (1) the state sentences would run concurrent with his federal sentence; (2) the

1. Including Conspiracy to Commit Theft (18 Pa.C.S. § 903(a), § 3921); Aiding Consummation of a Crime (18 Pa.C.S. § 5107); Obstructing Administration of Law or Other Governmental Function (18 Pa.C.S. § 5101); Hindering Apprehension or Prosecution (18 Pa.C.S. § 5105); Attempted Criminal Homicide (18 Pa.C.S. § 901, § 2501); Possessing Instruments of Crime (18 Pa.C.S. § 907); Aggravated Assault (18 Pa.C.S. § 2702(a)(1)); Aggravated Assault with a Deadly Weapon (18 Pa.C.S. § 2702(a)(4)); and Reckless Endangerment (18 Pa.C.S. § 2705).

run-date of the sentences would be retroactive to the commencement of the federal sentence; and (3) the Commonwealth would drop the other seven (7) counts in the criminal information.

Following sentencing, appellant filed a direct appeal with the Superior Court alleging that the trial court's consecutive sentences were a violation of his state [2] and federal [3] constitutional guarantees against being placed in "double jeopardy" with respect to the "same offense." Appellant also argued, in the alternative, that since the crimes "necessarily involve" each other, they should be merged for purposes of sentencing. The Superior Court rejected both arguments and affirmed the trial court's judgment of sentence. 387 Pa.Super. 646, 559 A.2d 960. In the instant appeal, appellant again raises the issues of double jeopardy and merger. For the reasons set forth below, we affirm the holdings of the lower courts.

In the context of protecting defendants against simultaneous multiple punishments for the "same offense", the concepts of double jeopardy, greater and lesser included offenses and merger are related but separate legal concepts. *See Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981). In 1977, Justice Pomeroy, while discussing merger and double jeopardy, frankly acknowledged that "Our decisions on the doctrine of merger are not altogether harmonious." *Commonwealth v. Sparrow*, 471 Pa. 490, 503, 370 A.2d 712, 718 (1977). Unfortunately, during the ensuing thirteen (13) years, we have only added to the disharmony by promulgating a series of conflicting and confusing decisions, which were consistent only in their

---

2. Art. I, § 10 of the Pennsylvania Constitution provides, in pertinent part, as follows: "No person shall, for the same offense, be twice put in jeopardy of life or limb; ..."

3. The Fifth Amendment of the United States Constitution provides, in pertinent part, as follows: "... nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb:...." Through the Fourteenth Amendment, this provision is binding on the states. *See North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

ability to elicit multiple combinations of recommended dispositions, i.e. plurality, concurring, dissenting, part concurring and part dissenting opinions. *See Commonwealth v. Leon Williams*, 521 Pa. 556, 559 A.2d 25 (1989); *Commonwealth v. Weakland*, 521 Pa. 353, 555 A.2d 1228 (1989); *Commonwealth v. Michael Williams*, 514 Pa. 124, 522 A.2d 1095 (1987), *cert. denied*, 487 U.S. 1208, 108 S.Ct. 2852, 101 L.Ed.2d 889 (1988); *Commonwealth v. Hitchcock*, 523 Pa. 248, 565 A.2d 1159 (1989); *Commonwealth v. Frisbie*, 506 Pa. 461, 485 A.2d 1098 (1984); *Commonwealth v. Bostic*, 500 Pa. 345, 456 A.2d 1320 (1983); *Commonwealth v. Houtz*, 496 Pa. 345, 437 A.2d 385 (1981); and *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981).

Not surprisingly, this Court has distinguished company, in the justices of the United States Supreme Court and other state courts, in continually and consistently muddying the waters in applying the legal analyses of double jeopardy, greater and lesser included offenses and merger to myriad and variegated facts. *See* generally, Thomas, *Multiple Punishments for the Same Offense: The Analysis After Missouri v. Hunter or Don Quixote, The Sargasso Sea, and the Gordian Knot*, 62 Wash.U.L.Q. 79–124, Spring, 1984.[4]

■ Notwithstanding the legal acumen of our distinguished *conferees* in the confusion, we do a grave disservice to the lower courts, prosecutors, defense counsel and defendants by continuing our fluctuating and fragmented decisions in this area.[5] Accordingly, we now hold that in the

---

**4.** *See* also Chief Justice, then Justice, Rehnquist's dissenting opinion in *Whalen v. United States*, 445 U.S. 684, 699, 100 S.Ct. 1432, 1442, 63 L.Ed.2d 715, 728 (1980) (Rehnquist, J., dissenting). "Despite its [i.e. double jeopardy] roots in antiquity, however, this guarantee seems both one of the least understood and, in recent years, one of the most frequently litigated provisions of the Bill of Rights. This Court has done little to alleviate the confusion, and our opinions, including ones authored by me, are replete with *mea culpa's* occasioned by shifts in assumptions and emphasis."

**5.** In a scathing dissent, in a case concerning double jeopardy in the context of successive prosecutions, Justice Scalia lamented the practical application, or lack thereof, of the Court's most recent foray into the intellectual quagmire double jeopardy has become. "Apart from

context of simultaneous convictions of multiple offenses,[6] pursuant to guilty pleas or trial verdicts, the trial court may sentence separately for each distinct statutory crime of which the defendant is convicted, limited only by express legislative intent to the contrary.[7]

In reaching this decision, we are not unmindful of the *Blockburger* test, first articulated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932) ("The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."). However, since the *Blockburger* test has been determined by the U.S. Supreme Court to be merely a rule of statutory construction and the Court has acknowledged that the highest state courts are the "ultimate expositors of state law", we are not bound by the *Blockburger* test in construing our own criminal statutes. *See Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508, 515 (1975) and *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

the lack of rational basis for this latter limitation, I am greatly perplexed (as will be the unfortunate trial-court judges who must apply today's rootless decision) as to what precisely it means." *Grady v. Corbin*, —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) (Scalia, J., dissenting).

6. We do not here address the issue of successive prosecutions or convictions on multiple offenses, which issue involves clear and separate "double jeopardy" concerns. Prosecutors would be well advised to avoid the "double jeopardy" aspects of successive prosecutions by charging and trying defendants on all offenses simultaneously.

7. *See*, for example, 18 Pa.C.S. § 906 and 18 Pa.C.S. § 3502(d). Also, with regard to overall legislative intent, it is noteworthy that the Legislature in adopting the Crimes Code, which is based on the Model Penal Code, chose not to adopt Section 1.07 of the Model Penal Code addressing punishments for multiple offenses. *See Commonwealth v. Miller*, 469 Pa. 24, 364 A.2d 886 (1976).

■ In deciding as we do today, we reaffirm our confidence in the discretionary power of the trial court, who, as the party most familiar with the particular aspects of the criminal conduct of the defendant and the harm occasioned the victim, will best be suited to mete punishment in light of the evils sought to be prevented by the Legislature. In keeping with our traditional deference to that sound discretion, judgments of sentences in this area will be reviewed only upon a showing of manifest abuse or sentencing outside the statutory limits. *See Commonwealth v. Plank,* 498 Pa. 144, 445 A.2d 491 (1982). Similarly, we are confident that if the Legislature intends that certain crimes be subsumed by, or merged into, other crimes that intention will be expressly stated.

■ In applying the above-stated holding to the facts *sub judice,* it is clear that since the relevant statutes do not express a legislative intent that the offenses merge, the decisions of the lower courts must be affirmed.[8] Appellant knowingly and voluntarily pled guilty to two distinct crimes, attempted murder and possession of an instrument of crime. Consecutive sentences by the trial court were within its discretionary powers. Accordingly, the decision of the Superior Court is hereby affirmed.

To the extent any of our prior decisions are inconsistent with today's holding, they are overruled.

FLAHERTY, J., files a concurring opinion in which NIX, C.J., and CAPPY, J., join.

ZAPPALA and PAPADAKOS, JJ., concur in the result.

FLAHERTY, Justice, concurring.

I concur in the result but write separately to suggest that the rationale of Mr. Justice McDermott is unworkable.

Mr. Justice McDermott reasons that:

---

**8.** We note that the same result would have obtained as to this appellant under any of the tests enunciated in our recent decisions. *See Commonwealth v. Leon Williams, supra., Commonwealth v. Weakland, supra.* and *Commonwealth v. Michael Williams, supra.*

in the context of simultaneous convictions of multiple offenses, pursuant to guilty pleas or trial verdicts, the trial court may sentence separately for each distinct statutory crime of which the defendant is convicted, limited only by express legislative intent to the contrary. At 377. Although this approach causes no mischief in the case at bar, it would require multiple sentencing in other cases where lesser included offenses are charged in the information and the defendant is convicted of all charges. For example, under such an approach, a defendant who has committed only one criminal act but who is charged with and convicted of theft and robbery or simple assault and aggravated assault, in the absence of legislative direction to the contrary, would be sentenced on all convictions, even though such sentencing violates this Court's well-established prohibition against multiple sentencing for lesser included offenses.

We had avoided this difficulty in two companion cases which were recently filed, *Commonwealth v. Weakland*, 521 Pa. 353, 555 A.2d 1228 (1989), and *Commonwealth v. Leon Williams*, 521 Pa. 556, 559 A.2d 25 (1989), where this Court held that:

> where the same facts are used to support convictions for crimes having different elements, the crimes do not merge for sentencing purposes, unless the same facts support convictions of lesser included offenses.[1]

*Weakland* 521 Pa. at 363, 555 A.2d 1228.

If we were to apply the *Leon Williams* holding to this case, as it was articulated above in *Weakland*, we would get the same result as Mr. Justice McDermott. In this particular case, the crime of possession of an instrument of crime, 18 Pa.C.S. § 907, is not a lesser included offense of attempted murder, 18 Pa.C.S. § 901 and § 2501, and the

---

1. A lesser included offense we defined as:
   a crime the elements of which are a necessary subcomponent but not a sufficient component of elements of another crime, the greater included offense. For example, theft is a lesser included offense of robbery.
   *Leon Williams*, 521 Pa. at 561, n. 2, 559 A.2d 25.

crimes would not, therefore, merge under *Leon Williams*. Further, were we to rely on the rationale of *Weakland* and *Leon Williams*, we would avoid promulgation of a scheme which would permit sentencing for lesser included offenses.

What underlies Mr. Justice McDermott's view is the concern, articulated in his dissent in *Leon Williams*, that traditional merger analysis is not adequate to protect society from various criminal enterprises in which multiple harms are inflicted:

> If two or more conspire to rob a bank and they do, then according to this theory the conspiracy, burglary, weapons offenses, thefts of cars, holding of hostages and assaultive acts to force the robbery are all subsumed by the accomplished robbery [under the theory of merger articulated in *Leon Williams*].

*Commonwealth v. Leon Williams*, 521 Pa. at 568, 559 A.2d at 31. (Dissenting opinion of Mr. Justice McDermott.) Such a concern has no foundation and seems to be based on the misperception that *Leon Williams* requires the merger of any criminal act which is part of the same *criminal enterprise*. That is not the case. Instead, *Leon Williams* requires merger only where the *elements* of one crime are subsumed into the *elements* of another crime. The extent of the criminal enterprise is irrelevant. All of the crimes mentioned in Mr. Justice McDermott's hypothetical have different elements and would not, therefore merge, under the *Leon Williams* analysis. The approach taken by Mr. Justice McDermott, therefore, is not required to meet the imagined deficiencies of *Leon Williams*.

Finally, although Mr. Justice McDermott's analysis does not present problems in the present case, if a case were to arise in which a criminal defendant were to be sentenced twice for a single criminal act—suppose that he were convicted both of theft and robbery and only one criminal act were involved—and if the legislature had failed to prohibit such punishment, we would then face significant difficulty in applying the rule of this case. On one hand, we would be

bound by this decision to affirm the judgment of sentence on both convictions, but on the other hand, principles of double jeopardy would seem to require that the sentence be vacated. Presumably, we would then be required to abandon the rule of law which Mr. Justice McDermott wishes to establish in this case.

For the reasons stated above, I would, therefore, retain the analysis of merger as it was articulated in the *Weakland* and *Leon Williams* cases.

This Concurring Opinion is joined by NIX, C.J., and CAPPY, J.