602 A.2d 1338

**COMMONWEALTH of Pennsylvania**

v.

**Joseph R. SERVICH, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 21, 1991.

Filed Jan. 16, 1992.

Reconsideration Denied March 3, 1992.

124

Paul R. Gettleman, Zelienople, for appellant.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before BECK, TAMILIA and HESTER, JJ.

HESTER, Judge:

Joseph Servich appeals the September 8, 1989 judgment of sentence imposed after a jury convicted him of third degree murder, conspiracy, theft, and unauthorized use of an automobile. Appellant was sentenced to a total term of imprisonment of nineteen and one-half to thirty-nine years imprisonment. We find that all eight of appellant's issues are meritless; we affirm.

Appellant's convictions arise from his participation in the murder of Albert Falbo on May 17, 1987. The Commonwealth's evidence was as follows. Megan Pedzwater, Kathleen Shearn, and Christine Tallant saw Mr. Falbo alive in the area of his Dormont apartment at approximately 8:30 to 9:00 p.m. on Saturday, May 16, 1987. The witnesses viewed the victim in a car with two other men, one of whom they could not identify and the other of whom they identified as Robert Blake. The women were able to identify Blake because he yelled obsenities at them. Blake was tried separately from appellant and convicted of second degree murder and related crimes in connection with the incident.

The medical testimony established that Mr. Falbo died from thirty-three stab wounds. He was discovered by his supervisor, David Lombardi, on May 19, 1987, at approximately 10:30 a.m. Mr. Lombardi testified that the victim did not appear for work on May 18, 1987, and May 19, 1987, and that he went to the victim's apartment because he continually received a busy signal when he telephoned.

Police were summoned, and Pittsburgh Police Detective Lee Torbin testified that he supervised the investigation. Appellant's fingerprints were discovered on a glass that was found inside Mr. Falbo's apartment. Based on an anonymous tip made to the Pittsburgh police, Detective Torbin went to a bar in the strip district in Pittsburgh. The owner of the bar gave the detective the name of Daniel Blake as someone who was involved in the murder. Daniel Blake was located and interviewed on May 22, 1987.

Daniel, Robert Blake's brother, testified as follows. Appellant moved into Daniel's apartment on May 7, 1987. On May 16, 1987, at 5:00 p.m., Daniel left for work from a strip district bar where he had been drinking with appellant and Robert. Daniel arrived home following work at approximately 12:30 a.m. Twenty minutes later, appellant arrived with blood on his shirt. Appellant informed Daniel that he had just killed someone. Appellant then took a wallet from his pocket, took the money from the wallet, and placed the wallet on top of a television set. Daniel looked through the wallet and recalled that it belonged to someone named Al. Appellant then washed, changed his clothing, and informed Daniel that he was going to Florida and to tell Robert. He left. Daniel placed appellant's bloody clothing and the wallet in a large plastic bag and threw it into the Allegheny River. Police recovered the bag from the river. Identification documents bearing the name of Albert Falbo were discovered in the bag.

Florida State Trooper David Laing testified as follows. He observed appellant illegally walking along on an interstate highway on May 22, 1987. He cited appellant and released him. When a computer check revealed that appellant was wanted for murder in Allegheny County, the trooper returned to where he last saw appellant, placed him under arrest, and transported him to the police department, where the trooper gave appellant *Miranda* warnings.

Florida State Trooper Steve Sprague testified that he questioned appellant about what occurred in Pennsylvania. Appellant told Trooper Sprague that he and Robert Blake

traveled from Pennsylvania to Georgia together and then went separate ways. Appellant said that he and Robert had planned to meet in Florida. Trooper Sprague then asked if Blake knew about the incident in Pittsburgh. Appellant replied that "Blake was involved and knew everything that had happened." Notes of Testimony, ("N.T."), at 10/26–28/88 (Vol. III), at 557. The Trooper also testified that appellant was arraigned at 8:30 a.m. on May 23, 1987, which was within the Florida requirement that a defendant be arraigned within twenty-four hours of arrest.

Appellant testified as follows on his own behalf. After he and Robert Blake left the bar where they were drinking in the strip district, they encountered the victim driving his car. Robert, who was acquainted with Mr. Falbo, suggested that they go to Mr. Falbo's apartment to drink. On the way, they stopped to purchase cigarettes at an AM–PM Mini Market near the victim's home, which is where Robert yelled at the three women. After arriving at Mr. Falbo's apartment, appellant drank a beer and watched television. Mr. Falbo sexually propositioned Robert and then told appellant to take his car and purchase some beer. Appellant left with the car and went to Sanremo's bar in Pittsburgh. He drank a beer and watched the news on television. He then returned to Mr. Falbo's house, where Robert was waiting for him outside. Robert entered the passenger's side of the car and ordered appellant to drive away. Robert had dark stains on his clothing. Based on this evidence, the jury convicted appellant of conspiracy, third degree murder, theft, and unauthorized use of an automobile. This appeal followed denial of post-trial motions and imposition of the described sentence.

■ Appellant first challenges the trial court's refusal to grant a mistrial under the following circumstances. Prior to trial, the defense discovered that Daniel Blake was to testify that when appellant arrived at the apartment at 12:30 a.m. on May 17, 1987, appellant stated that "he just killed a guy this time—a faggot." Appellant presented a motion in limine to exclude the "this time" language, as it

raised an impermissible inference that appellant had engaged in prior criminal activity. The trial court agreed and instructed the district attorney to tell the witness not to use the words "this time" when describing appellant's comments. However, when asked to tell the jury what appellant said on May 17, 1987, the witness did use the prohibited language. An immediate objection was made and sustained. A sidebar discussion ensued. The trial court determined that a curative instruction might direct the jury's attention to the "this time" language and that the jury may not have noticed the reference. He then decided not to give a curative instruction and deferred ruling on the motion for mistrial until the close of the witness's testimony.

The witness was subjected to rigorous cross-examination. The primary focus of this cross-examination was whether appellant had said that the victim was "a faggot" when he confessed to Daniel. Daniel had not included that language when initially describing appellant's statement to police. Instead, appellant was described as saying that he killed "a guy." Thus, during cross-examination, appellant emphasized this inconsistency in Daniel's testimony. Daniel's direct examination accounts for forty-five transcribed pages. Two hundred thirty-three transcribed pages appear in the record prior to the termination of his cross-examination, and ninety-five additional pages cover the witness's redirect and recross. Daniel never repeated the language "this time." At the close of Daniel's testimony, the trial court concluded that a mistrial was not warranted.

Under these circumstances, we view *Commonwealth v. Bruner,* 388 Pa.Super. 82, 564 A.2d 1277 (1989), as dispositive of appellant's claim. There, we stated:

The decision of whether to declare a mistrial of a criminal prosecution is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Commonwealth v. Larkins,* 340 Pa.Super. 56, 489 A.2d 837 (1985). The decision depends on whether or not improper evidence was admitted at trial that would so prejudice the fact finder that it would be

unable to remain impartial, thereby prejudicing the accused beyond a reasonable doubt. *Id.* The admission of testimony from which a jury could infer past criminal conduct has been held to be reversible error. *Commonwealth v. Phillips,* 373 Pa.Super. 193, 540 A.2d 933 (1988). Reversal is not warranted, however, unless the record indicates that prejudice resulted from the testimony. *Commonwealth v. Allen,* 448 Pa. 177, 292 A.2d 373 (1972). Mere "passing references" to criminal activity do not necessitate the granting of a mistrial unless prejudice results from the reference. *Commonwealth v. Thomas,* 361 Pa.Super. 1, 521 A.2d 442, *appeal denied* 516 Pa. 617, 531 A.2d 1119 (1987).

*Id.,* 388 Pa.Super. at 103, 564 A.2d at 1287.

In the present case, this was an isolated, passing reference to criminal activity during the witness's lengthy testimony. In addition, the parties focused on a different issue with respect to the witness's testimony. The trial court was in the best position to determine whether the "this time" was prejudicial, rendering the jury unable to remain impartial. We defer to the trial court's decision regarding the necessity for a mistrial.

█ Appellant next contends that it was error to refuse to grant his request to have the jury instructed on the defense of duress as to the charge of unauthorized use of an automobile. The request for a duress charge was premised upon the following evidence produced at trial. First, appellant noted that Robert Blake was acting unusual. Appellant gave as an example the fact that Robert yelled obscenities at the young women at the market. As to direct evidence of duress, appellant testified as follows. After Robert entered the car at Mr. Falbo's apartment, he started "yelling and hollering to get the hell going." N.T., 11/1–4/91 (Vol. IV), at 787. Appellant then was ordered to go to Daniel's apartment, where both men left the car. After Robert changed his clothing, the two then reentered the victim's car, which appellant drove. Robert started to use obscenities again during the ride. They stopped at a gas

station, where appellant exited the car to pump gasoline and Robert left the car to pay. Robert returned, entering the driver's side of the car. Appellant then entered the passenger seat and asked Robert why he was using a car that did not belong to him. At that point, Robert said to appellant, "Shut the f__ up.... [I] already f__ed up one person, don't make me f__ you up." *Id.*, at 794-95.

Appellant suggests that this evidence was sufficient to warrant a charge on the defense of duress as to the charge of unauthorized use of an automobile. We disagree. 18 Pa.C.S. § 309 provides, "It is a defense that the actor engaged in the conduct charged ... because he was coerced to do so by the use of, or a threat to use, unlawful force against his person...." In the present case, appellant was not threatened with force until after he had three opportunities to avoid the situation. First, he was driving the car when Blake first approached him outside Mr. Falbo's apartment. At that point, appellant did not have to allow Blake into the car and could have driven away. Second, appellant admittedly went into Daniel's apartment and then voluntarily reentered the car with Robert. Third, appellant could have escaped while Robert was paying for the gasoline. The threat to use force did not occur until after these three opportunities to avoid using illegally the victim's car. 18 Pa.C.S. § 309(b) provides that the defense of duress is not available "if the actor recklessly placed himself in a situation in which it was probable that he would be subjected to duress." Thus, appellant cannot avail himself of this defense since he placed himself in the situation where threats of force were made. Since the evidence did not warrant a charge on duress, the trial court did not err.

Appellant also argues that the trial court erred in allowing the Commonwealth to comment on the fact that appellant had not provided it with notice of the alibi defense that he presented through his own testimony. In support of his position, he suggests that he was not required to provide notice of the defense for two reasons: 1) the time of the

murder was not set forth precisely in the indictment; and 2) he was the only witness to testify as to the alibi.

 Pa.R.Crim.P. 305 C(1)(a) requires a defendant to notify the Commonwealth when he intends to present an alibi defense. There is no exception either when the Commonwealth cannot establish the precise moment of the murder or when the alibi is to be established solely through the testimony of the defendant. Appellant knew that he was going to present significant alibi defense. He testified that he left the crime scene during the murder to drink at a specified bar in Pittsburgh for a lengthy period. The Supreme Court has ruled specifically that a defendant's testimony alone is sufficient to raise an alibi defense. *Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597 (1980).

Furthermore, the Commonwealth was prejudiced by the lack of notice. Appellant indicated both when he was in the bar and where it was located. If notified, the Commonwealth may have been able to rebut his testimony. The jury may have drawn an adverse inference from the Commonwealth's failure to establish that appellant was not at the bar. Rather than allow for another continuance, which the defense had successfully obtained on many other occasions, the trial court determined that the Commonwealth would be permitted to explain why it was unprepared. Under these circumstances, we conclude that this was not error. *See Commonwealth v. Feflie*, 398 Pa.Super. 622, 581 A.2d 636 (1990) (trial court has broad discretion in choosing an appropriate remedy for a violation of Pa. R.Crim.P. 305).

 Appellant also objects to the suppression court's failure to suppress the inculpatory statement that he made to the Florida authorities. He first proposes that the court was incorrect in relying upon the testimony of State Trooper Laing that he informed appellant of his constitutional rights and that appellant waived them. Appellant is apparently arguing that a factual finding cannot be premised

upon oral testimony. This, of course, is absurd. When reviewing the decision of a suppression court, we

> "determine whether the factual findings of the suppression court are supported by the record. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense, as, fairly read in the context of the record as a whole, remains uncontradicted. If, when so viewed, the evidence supports the factual findings, we are bound by such findings and may only reverse if the legal conclusions drawn therefrom are in error. *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701 (1982)."

*Commonwealth v. Mickens*, 409 Pa.Super. 266, 269, 597 A.2d 1196, 1198 (1991), quoting *Commonwealth v. Schneider*, 386 Pa.Super. 202, 206, 562 A.2d 868, 870 (1989). There is no authority for the proposition that a defendant's waiver of his *Miranda* rights must be in writing, and since the trooper's testimony establishes that waiver occurred, appellant's contention must be rejected.

■ Appellant also argues that his statement must be suppressed since he was not arraigned within the time required under Pennsylvania law. We agree with the suppression court that this argument is meritless. Appellant was arrested in Florida and arraigned in accordance with that state's requirements. It would be "unrealistic to require law enforcement officers to be familiar with the rules of procedure of each of the fifty states." Trial court opinion, 4/23/90, at 8. As appellant was processed in accordance with the United States Constitution and the law of the state where he was arrested, his claim must be rejected. *See Commonwealth v. Harris*, 491 Pa. 402, 421 A.2d 199 (1980) (in determining validity of arrest, the law of the state where the defendant was arrested is applied).

■ We also observe that appellant took the stand in his defense and essentially confirmed the substance of the statements that he now contends should be suppressed. N.T., 11/1–4/88, at 803. We have held that when the accused testifies in his own behalf and repeats the sub-

stance of a confession claimed to be inadmissible, the confession's admission into evidence during the Commonwealth's case is rendered harmless beyond a reasonable doubt. *Commonwealth v. Barnes*, 273 Pa.Super. 295, 417 A.2d 656 (1979).

■ Appellant premises his next argument, which is that the evidence regarding his fingerprints should have been excluded, on his allegation that the Commonwealth could not "establish at what time the print was placed on the glass or if the glass was in the apartment when the print was placed on it." Appellee's brief at 31. This argument is frivolous. In *Commonwealth v. Cichy*, 227 Pa.Super. 480, 323 A.2d 817 (1974), we held that if the Commonwealth's evidence can establish that fingerprints were impressed at approximately the time that the crime was committed, the fingerprints are probative evidence of guilt.

In the present case, it was stipulated that the victim's apartment had been cleaned on the day of the murder, May 16, 1987, and that when the victim's mother left his apartment at 11:30 a.m. on that day, there were no glasses underneath the coffee table. Police found the glass with appellant's fingerprints under the coffee table during their investigation. Furthermore, appellant admitted to drinking beer inside the apartment just prior to the murder. Thus, his own testimony establishes that the fingerprints were impressed at approximately the time that the crime was committed and therefore were admitted properly under *Cichy*.

■ Appellant alleges next that it was impermissible for the Commonwealth to argue accomplice liability to the jury when it also proceeded on the theory that appellant, not Blake, had actually committed the murder. The law is to the contrary. *Commonwealth v. Potts*, 388 Pa.Super. 593, 566 A.2d 287 (1989), *petition for allowance of appeal granted*, 525 Pa. 656, 582 A.2d 322 (1990). In the present case, the Commonwealth noted during opening argument

that it intended to present evidence on conspiracy and accomplice liability. Thus, the Commonwealth was permitted to argue regarding accomplice liability. *Id.*

 Next, appellant alleges both that his sentence was excessive and that the sentencing court erred in imposing separate sentences on all four crimes. Appellant's first argument as to his sentence relates to the discretionary aspects of sentencing. Pa.R.A.P. 2119(f) and *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987), require appellant to include in his brief a separate statement of reasons relied upon for this appeal. Appellant has not complied with that requirement.

Furthermore, the Commonwealth, relying upon *Tuladziecki*, has objected to the lack of a statement. In accordance with the dictates of the Supreme Court's decision in *Tuladziecki*, we are precluded from addressing the merits of this sentencing claim. *Accord Commonwealth v. Rochon*, 398 Pa.Super. 494, 581 A.2d 239 (1991). *Compare: Commonwealth v. Zelinksi*, 392 Pa.Super. 489, 573 A.2d 569 (1990) (where Commonwealth does not object to lack of a statement, we may, in our discretion consider sentencing issue); *Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987) (same).

 Appellant's second objection to his sentence is that the crime of theft and unauthorized use of the car should have merged for sentencing purposes and that the crimes of theft, conspiracy, and third-degree murder should have merged for sentencing purposes.[1] As merger claims relate to the legality of the sentence, *Tuladziecki* does not apply, and this claim may be reviewed. *See Commonwealth v. Walker*, 468 Pa. 323, 362 A.2d 227 (1976) (merger issue

---

1. The Commonwealth relies upon *Commonwealth v. Burkhardt*, 526 Pa. 341, 586 A.2d 375, 377 (1991), where a plurality of the Court stated that "in the context of simultaneous verdicts, the trial court may sentence separately for each distinct statutory crime of which the defendant is convicted, limited only by express legislative intent to the contrary." However, *Burkhardt* is not precedential as to the merger issue. *Commonwealth v. Bird*, 409 Pa.Super. 211, 217 n. 6, 597 A.2d 1169, 1172 n. 6 (1991).

134

relates to legality of sentence); *Commonwealth v. Turner,* 265 Pa.Super. 486, 402 A.2d 542 (1979).

The current law on merger derives from *Commonwealth v. Williams,* 521 Pa. 556, 559 A.2d 25 (1989), and *Commonwealth v. Weakland,* 521 Pa. 353, 555 A.2d 1228 (1989). Under *Williams,* crimes do not merge unless: (1) the crimes have the same elements, *i.e.,* are lesser included offenses, and (2) the facts of the case are such that the facts which establish one criminal charge also serve as the basis for the additional criminal charge.

In this case, even if we assumed that the crimes were lesser included offenses, appellant's claims would fail. Appellant was convicted of one count of theft. The evidence established that appellant both stole the money from Mr. Falbo's wallet and took his car. Thus, the stolen car does not serve as the sole basis for the theft conviction. The third-degree murder conviction results from appellant's (or his accomplice's) action of stabbing the victim, and the conspiracy conviction rests on the existence of an agreement between appellant and Blake to murder and rob Mr. Falbo. The facts of this case are such that the facts which establish one criminal charge do not serve as the sole basis for the additional criminal charges. Accordingly, merger does not apply, and appellant's argument fails.

Judgment of sentence affirmed.