621 A.2d 681

COMMONWEALTH of Pennsylvania

v.

Mark A. HUTCHINSON, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 16, 1992.

Filed March 9, 1993.

572

Louis M. Dayich, Waynesburg, for appellant.

David F. Pollock, Dist. Atty., Waynesburg, for Com., for appellee.

Before ROWLEY, President Judge, and CIRILLO and MONTGOMERY, JJ.

ROWLEY, President Judge:

Mark A. Hutchinson appeals from the judgment of sentence entered after he was convicted of homicide by vehicle, homicide by vehicle while driving under the influence, driving under the influence, and driving at an unsafe speed. He raises the following issues in this appeal: (1) whether the trial court erred in refusing to allow defense counsel to argue and refusing to instruct the jury that it could find that the decedent legally caused his own death by operating a farm tractor on the highway in violation of the registration requirements of the Motor Vehicle Code; (2) whether trial counsel was ineffective for failing to request an instruction concerning the decedent's operation of his tractor in violation of the lighting requirements of the Motor Vehicle Code; (3) whether the trial court erred in denying appellant's motion for curative instructions after the Commonwealth speculated on appellant's act of drinking a bottle of beer immediately prior to the accident while operating his motor vehicle; and (4) whether trial counsel was ineffective for failing to object to the imposition of consecutive terms of imprisonment for driving under the influence and homicide by vehicle while driving under the influence. After reviewing the record, we vacate the judgment of sentence and remand for a new trial.

We adopt the following statement of facts as set forth by the trial court in its opinion:

On August 12, 1990, just after midnight, the defendant, Mark Hutchinson, was involved in an accident that claimed the life of Douglas Moore. The accident occurred on First Street in the village of Mather, Pennsylvania. The night was foggy and the visibility limited.

The defendant had been drinking at the Third Base Lounge, near Mather, and was travelling through Mather, away from the direction of his home, in his 1979 Chrysler automobile. The decedent was driving his 1947 Model A John Deere tractor and was being followed by his cousin, Chad Moore, driving an Allis–Chalmers tractor, followed by the decedent's sister, Holly Moore, who was driving a 1989 Chevrolet Cavalier with its four-way flashers in operation. These vehicles were headed home from the Greene County Fairgrounds near Waynesburg.

The Moore party was approaching Mather when the defendant's automobile approached from their rear. Both Holly Moore and Chad Moore testified that the defendant's vehicle swerved off and back onto the road. Chad Moore, driving the Allis–Chalmers tractor, and Holly Moore, driving the Chevrolet, both pulled off to the side of the road in order that the vehicle driven by the defendant could pass due to their fear that he was going to hit them. However, Douglas Moore, who was in front of the other two vehicles, did not pull off the roadway. Holly Moore and Robin Diane Williams, a passenger in Ms. Moore's vehicle, both testified that the vehicle driven by the defendant passed them at a fast rate of speed. Mr. Hutchinson then hit the decedent's tractor from behind causing the front wheels of the tractor to become airborne and to veer left across the road, hitting a parked car and a tree before coming to rest. The decedent was thrown from the tractor upon impact and died as a result of injuries sustained.

At trial, the Commonwealth presented expert testimony that the defendant had been travelling at least 44.7 mph[, almost 20 mph over the posted speed limit.] In addition, the state police officer who administered the breathalyzer test testified that the blood alcohol level of the defendant, tested at approximately 2:00 a.m., was 0.162%.

Trial Court Opinion (Grimes, P.J.), 12/5/91, at 1–2 (footnote omitted).

Appellant was convicted after a jury trial of homicide by vehicle, homicide by vehicle while driving under the influence,

driving under the influence, and the summary offense of driving at an unsafe speed. After denying appellant's post-verdict motions, the trial court sentenced him to a term of imprisonment of three to seven years for homicide by vehicle while driving under the influence and a consecutive term of imprisonment of six months to two years for driving under the influence. The trial court imposed no additional term of imprisonment for homicide by vehicle, finding that that charge merged with homicide by vehicle while driving under the influence. This timely appeal was then filed.

■ In his first two issues, appellant contends that the jury was not properly instructed with regard to the consideration it should give to the decedent's own conduct in determining the cause of the decedent's death. He first contends that the trial court erred in refusing to allow defense counsel to argue and refusing to instruct the jury that the decedent was driving his tractor on a public highway in violation of the Motor Vehicle Code's registration requirements. Although we conclude, for reasons discussed below, that appellant was not entitled to such an instruction, we agree that sufficient evidence was presented to show that the decedent operated his tractor on a public highway in violation of the Vehicle Code's registration requirements.

Section 1302 of the Vehicle Code, titled "Vehicles exempt from registration," provides exemption status to:

Any implement of husbandry or trailer determined by the department to be used exclusively for agricultural operations and only incidentally operated upon highways. Vehicles exempt from registration under this paragraph shall be used exclusively upon a farm or farms owned or operated by the owner of the vehicle or upon highways between:

(i) Parts of one such farm.

(ii) Such farms located not more than 25 miles apart.

(iii) Such farm or farms and a place of business located within a radius of 25 miles from the farm for the purpose of buying or selling agricultural commodities or supplies or for delivery, repair or servicing of the vehicle.

75 Pa.C.S. § 1302(2). In the present case, Trooper Joseph Palmer, the state trooper presented as a Commonwealth witness, testified that tractors are not allowed to operate as passenger vehicles on the highways because they are not registered. Trooper Palmer also testified that such a tractor operator would be subject to a citation, depending upon whether the tractor is being used for farm work and whether it is within the legal distances. Upon further questioning, he stated that the decedent's tractor was not being used for farm work or within the permissible distances. More importantly, it was uncontroverted that the decedent was returning home from a tractor pull at a county fair.

Accordingly, it was inaccurate for the trial court to conclude that there was insufficient evidence that the tractor in question was in violation of the registration requirements of the Vehicle Code. Sufficient evidence was presented considering that a county fair tractor pull is not a part of the decedent's farm, is not an additional farm of decedent, and is not for the purpose of buying or selling agricultural commodities or supplies or for the delivery, repair or servicing of the vehicle.

Similarly, we have reviewed the record and conclude that there was sufficient evidence that the decedent violated the lighting requirements of the Vehicle Code. Section 4303, titled "General lighting requirements," provides, in relevant part: "Every vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to, rear lamps, rear reflectors, stop lamps and license plate light, in conformance with regulations of the department." 75 Pa.C.S. 4303(b). The following testimony was elicited at trial:

Q. [By defense counsel] What basically does an authorized vehicle for use on the highway need to have by state regulations?

A. [By Trooper Palmer] Red lights to the rear.

\*        \*        \*        \*        \*        \*

Q. Did the tractor have a red light on it?

A. No, sir, it did not.

Reproduced Record at (4)a. Additionally, Trooper Palmer testified that the tractor would not be allowed on the roadway because it was not equipped with proper lighting.

In light of this testimony, we hold that sufficient evidence was presented to support the conclusion that the decedent operated his vehicle in violation of the Vehicle Code. In addition, although we conclude that appellant is not entitled to a new trial on the basis that the trial court erred in refusing to instruct the jury regarding the Vehicle Code's registration requirements, we hold that trial counsel was ineffective for failing to request an instruction on the lighting requirements.

As the following cases reveal, the decedent's conduct is not irrelevant in a homicide by vehicle case. Although the decedent's own actions are not a defense to a criminal action, they may diminish the defendant's responsibility as the legal cause of the accident. *Commonwealth v. Clowser*, 212 Pa.Super 208, 215, 239 A.2d 870, 873 (1968).

In *Commonwealth v. Uhrinek*, 518 Pa. 532, 544 A.2d 947 (1988), the Supreme Court reversed the defendant's homicide by vehicle conviction because the trial court improperly excluded evidence of the deceased pedestrian's intoxication. In so doing, the Court stated, "The causation theory properly applied in criminal cases is not the same as the civil 'proximate cause' standard. The defendant's conduct must be a direct and substantial cause of the injury." *Id.* at 540, 544 A.2d at 951. The Court also determined that "[t]he trial court's refusal to permit the appellant to introduce evidence of the decedent's intoxication, where the appellant was prepared to support his theory with expert testimony, prevented him from challenging the causal connection between his conduct and the accident, a direct connection that the Commonwealth must prove beyond a reasonable doubt." *Id.* at 542, 544 A.2d at 952.

Similarly, in *Commonwealth v. Bartolacci*, 409 Pa.Super. 456, 598 A.2d 287 (1991), *allocatur denied*, 530 Pa. 638, 607 A.2d 249 (1992), the defendant sought to admit evidence to prove that the dangerous condition of the roadway where his

accident occurred and the location of the utility pole he struck were the cause of the accident. The defendant wanted to offer evidence that the utility pole was removed because it was a dangerous condition and that previous accidents had occurred at the site where the pole was located to demonstrate that a dangerous condition existed. This Court held that it was error to exclude such evidence. The Court stated, "In a criminal trial where the jury has the responsibility of determining the 'direct cause' of death in order to decide whether or not to covict [sic] the defendant of homicide by vehicle, evidence of other factors which may have been the direct cause of death is clearly appropriate." *Id.* at 462, 598 A.2d at 290.

In the present case, appellant first argues that the jury should have been instructed that they should consider that the decedent was operating the tractor on a public highway in violation of the Vehicle Code's registration requirements. This argument has no merit. Although it is true that the decedent would not have been driving the tractor on the road if he had complied with the Vehicle Code, his act of driving the tractor on the public road, without more, was not a substantial cause of the accident.

However, appellant's second contention, that is, that counsel was ineffective for failing to request an instruction concerning the Vehicle Code's lighting requirements, has merit. In *Commonwealth v. Rollins,* 525 Pa. 335, 580 A.2d 744 (1990), our Supreme Court set forth the following standard for reviewing an ineffectiveness of counsel claim:

> [W]e must first determine whether the issue underlying the claim is of arguable merit. If the claim lacks merit, our inquiry ceases, as counsel will not be deemed ineffective for failing to pursue a baseless or meritless issue. If, however, the claim has merit, we must then determine whether the course of action chosen by counsel had some reasonable basis designed to effectuate his client's interests. Finally,

appellant must show that counsel's ineffectiveness so prejudiced his case that he was denied a fair trial.

*Id.* at 344, 580 A.2d at 748 (citations omitted).

In the present case, ample evidence was elicited concerning the tractor's lighting. There was also evidence presented concerning the limited visibility which existed on the night of the accident. Furthermore, appellant testified that he saw the light on the rear of the tractor, but because he saw only a white light, he thought that the vehicle was traveling towards him in his lane.

The jury could have properly considered the evidence concerning the lighting and the effect that lighting had on appellant's ability to avoid the accident, if the trial court had instructed the jury that it could so consider that evidence. As *Uhrinek* and *Bartolacci* reveal, evidence of factors other than the defendant's violation of the Vehicle Code which may have caused the accident is relevant and admissible. The defendant's introduction of such evidence, however, would be ineffectual without instructions to the jury regarding the consideration which should be given to that evidence. Accordingly, the issue underlying appellant's claim of ineffectiveness has merit.

■ We further conclude that counsel had no reasonable basis for failing to request an instruction on the lighting requirements. By eliciting testimony concerning the tractor's lighting and the poor visibility on the night in question, counsel apparently intended to present a theory that appellant's violations of the Vehicle Code were not the legal cause of the accident. Counsel could have had no reasonable basis for failing to request an instruction which would have informed the jury of the relevance of that evidence.

Finally, if the jury, after proper instructions, had concluded that the decedent's failure to equip the tractor with proper lighting, rather than appellant's violations of the Vehicle Code, was the direct cause of the accident, appellant would have been found not guilty. The trial court's instructions, in view of the evidence presented, did not adequately explain the issue

of causation to the jury, however. Therefore, counsel's ineffectiveness prejudiced appellant.

The trial court instructed the jury that in order for them to find appellant guilty, they would have to find that his actions were a substantial factor in causing the accident. Although that instruction was a correct statement of law, it was incomplete as the trial court did not instruct the jury regarding the decedent's failure to equip the tractor with proper lighting.

In *Commonwealth v. Amecca,* 160 Pa.Super. 257, 50 A.2d 725 (1947), this Court held that the trial court erred in instructing the jury that if the decedent acted in a negligent and careless manner, it was irrelevant. Rather, the Court held that "the jury should be instructed that the negligence of the deceased is no defense, *unless* the deceased's own negligence was a substantial factor (legal cause) in bringing about his own harm, injury and death." *Id.* at 262, 50 A.2d at 728 (emphasis in original). Although *Amecca* was overruled by this Court in *Commonwealth v. Root,* 191 Pa.Super. 238, 156 A.2d 895 (1959), the Supreme Court reversed this Court's decision in *Root. See Commonwealth v. Root,* 403 Pa. 571, 170 A.2d 310 (1961). In so doing, the Court determined that the defendant was not the cause of the decedent's death. Therefore, the jury instructions were not at issue. As a result, this Court's decision in *Root* has no precedential effect.

In *Commonwealth v. Youngkin,* 285 Pa.Super. 417, 427 A.2d 1356 (1981), the defendant was convicted of involuntary manslaughter for prescribing a barbiturate to a patient who died of asphyxiation from aspiration of the contents of her stomach after the drug depressed her gag reflex. On appeal, the defendant argued that the trial court erred in failing to instruct the jury on the meaning of supervening cause. The Superior Court approved the trial court's charge which informed the jury that in order to find the defendant guilty of involuntary manslaughter they must find that the decedent's death was the direct result of an act of the defendant, and that the jury should consider whether the decedent's conduct in

any way diminished the defendant's responsibility with regard to the legal cause of death.

In discussing causation, the Court in *Youngkin* stated:
[I]t has never been the law of this Commonwealth that criminal responsibility must be confined to a sole or immediate cause of death. Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result.

*Id.* at 425, 427 A.2d at 1359–60 (quoting *Commonwealth v. Skufca,* 457 Pa. 124, 132–33, 321 A.2d 889, 894 (1974), *appeal dismissed,* 419 U.S. 1028, 95 S.Ct. 510, 42 L.Ed.2d 304 (1974)).

In *Commonwealth v. Britcher,* 386 Pa.Super. 515, 563 A.2d 502 (1989), *aff'd per curiam,* 527 Pa. 411, 592 A.2d 686 (1991), the defendant was convicted of homicide by vehicle and homicide by vehicle while driving under the influence. He argued on appeal that his due process rights were violated at trial when he was required to defend against two mutually inconsistent theories of liability, that is, that the decedent died as a result of the defendant's reckless speeding and that the decedent died as a result of the defendant's intoxication. In rejecting the defendant's argument, the Court stated:
While homicide by vehicle and homicide by vehicle while under the influence each require proof of direct causation of the same death by different causes, the causes need not be 'mutually inconsistent.' Multiple causes may all give rise to criminal liability so long as one does not supervene the other and each may properly be considered direct and substantial. Such causes may properly be characterized as substantial concurrent causes.

*Id.* at 525, 563 A.2d at 506 (citations and internal quotation marks omitted).

In *Britcher,* unlike the present case, the different causes discussed were both acts of the defendant, each of which could give rise to liability. In the present case, the different causes at issue are the defendant's violations of the Vehicle Code and the decedent's alleged negligence, also a

violation of the Vehicle Code. Despite this difference, we conclude that the rationale of *Britcher* is applicable to the present case, and appellant may be found criminally liable if his actions are determined to be a direct and substantial cause of the decedent's death, even if the decedent's alleged negligent acts were also substantial.

This conclusion receives further support from the Pennsylvania Standard Jury Instructions. The suggested instruction for homicide by vehicle sets forth, in relevant part, the following:

> In order to find the defendant guilty of homicide by vehicle you must find that each of the following elements has been established beyond a reasonable doubt:
> 1. That the defendant caused the death of [the decedent];
> 2. That the defendant was (operating) (using) a vehicle in violation of (specify law or ordinance) applying to the ((operation) (use) of a vehicle) (regulation of traffic); (and)
> 3. That the defendant's act in violating the law was (a) (the) direct cause of [the decedent's] death. A defendant's act in violating the law cannot be a direct cause of a death unless the death would not have occurred but for that act and violation of law. (In this connection you should recognize that legally there may be more than one cause of death but that what is required for a finding of guilty is that the defendant's actions were one of the direct causes.); (and)
> (4. That [the decedent's] conduct did not diminish the defendant's responsibility for causing [the decedent's] death to such an extent that the defendant's act was not (a) (the) direct cause of [the decedent's] death.)

Pennsylvania Standard Jury Instruction 17.3732 (Criminal).

In conclusion, we hold that where the defendant argues that the accident was caused by the decedent's conduct, rather than the defendant's conduct, the trial court should instruct the jury that it must determine whether the defendant's conduct was a direct and substantial cause of the accident. Additionally, the trial court should instruct the jury that it must consider whether the decedent's conduct, rather than the defendant's conduct, was the cause of the accident. In so

doing, however, the trial court should not instruct the jury that there can only be one cause of an accident or that if the decedent's conduct is substantial, the defendant must be found not guilty, even if the defendant's own conduct is a substantial cause of the accident.

Because we vacate the judgment of sentence and remand for a new trial on the above issue, we need not address appellant's remaining issues.

Judgment of sentence vacated and case remanded for a new trial. Jurisdiction is relinquished.

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting:

I respectfully dissent. I would find the evidence of Moore's alleged vehicular violations insufficiently developed to require a jury charge. I am convinced, as was the trial judge, that the cause of Moore's death was the reckless and drunken driving by Hutchison.

When we consider whether the trial court erred when it refused to charge the jury regarding the alleged illegality of the operation of a tractor on the highway, we must examine the charge in its entirety *against the background of the evidence* to determine whether or not the error, if there was one, was prejudicial to the defendant. *Commonwealth v. Woodward*, 483 Pa. 1, 4, 394 A.2d 508, 510 (1978) (emphasis added). Thus, our examination begins with the question of whether the trial court erred in refusing the charge; only if we answer that question in the affirmative do we consider whether the error prejudiced the defendant. *Id.* If the requested instruction is inapplicable and improper, the court should not charge on it. *Commonwealth v. Cottam*, 420 Pa.Super. 311, 335–37, 616 A.2d 988, 1000 (1992), citing *Commonwealth v. Kyle*, 367 Pa.Super. 484, 509–10, 533 A.2d 120, 133 (1987); *see also Commonwealth v. Smith*, 511 Pa. 343, 356, 513 A.2d 1371, 1377 (1986), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987).

The first question we must ask about a proposed charge to the jury is whether it is warranted by the evidence presented in the case. *Commonwealth v. Mayfield,* 401 Pa.Super. 560, 573, 585 A.2d 1069, 1075 (1991), (citing *Commonwealth v. Schaller,* 493 Pa. 426, 431, 426 A.2d 1090, 1093 (1981)). In this case, the majority holds that the trial court's failure to charge on the Vehicle Code's lighting requirements is reversible error.

When charging a jury, the judge must clarify the issues so that the jury understands the questions to be resolved. *Commonwealth v. Beach,* 438 Pa. 37, 40, 264 A.2d 712, 714 (1970). When evidence of a proposed defense is lacking, the judge may not charge on that defense. *See Mayfield, supra* (holding that when a defendant denies the use of deadly force to defend himself, he may not have a charge to the jury on self-defense).

A trial judge must not charge a jury on issues which are not part of the evidence of the case. *Cottam, supra.* For that reason, a suggested charge on the Motor Vehicle Code's lighting requirements would have been properly rejected because the record contains no evidence of the Code's lighting requirements as applied to farm vehicles. Therefore, I would hold counsel was not ineffective for failing to ask for the charge. *Commonwealth v. Johnson,* 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991) (We are first required to determine whether the issue underlying the claim is of arguable merit; if the claim is without merit, our inquiry ends.).

In light of the majority's holding granting a new trial, I too find it unnecessary to address the question of potential prejudice in the prosecutor's closing argument.

I would, however, take this opportunity to consider the question of the merger of sentences for the guidance of the trial court, should Hutchison once again be convicted of both driving under the influence and homicide by vehicle while under the influence.

When we review the merger or non-merger of offenses for the purposes of sentencing, we defer to the sound discretion of

the trial court and will reverse only upon a showing of manifest abuse or error of law. *Commonwealth v. Weakland,* 521 Pa. 353, 555 A.2d 1228 (1989).

The jurisprudence of merger is in flux. The most recent reasoning of the Pennsylvania Supreme Court is expressed in a plurality opinion, which, while not precedential exemplifies the debate. There, Justice McDermott wrote for the plurality that:

> [I]n the context of simultaneous convictions of multiple offenses, pursuant to guilty pleas or trial verdicts, the trial court may sentence separately for each distinct statutory crime of which the defendant is convicted, limited only by express legislative intent to the contrary ... [I]f the Legislature intends that certain crimes be subsumed by, or merged into, other crimes that intention will be expressly stated.

*Commonwealth v. Burkhardt,* 526 Pa. 341, 347, 586 A .2d 375, 377–78 (1991).

The *Burkhardt* reasoning for judging merger is at variance in words, at least, from the Pennsylvania Supreme Court's holding in *Commonwealth v. Leon Williams,* 521 Pa. 556, 564, 559 A.2d 25, 29 (1989) which abolished merger except for lesser included offenses.[1] Mr. Justice Flaherty's concurring opinion in *Burkhardt* points out the difficulty of returning the problem to the legislature because it is possible in the meantime that a defendant could be sentenced twice for robbery and theft charges arising out of a single criminal act.[2]

---

**1.** In *Williams,* the Pennsylvania Supreme Court defined a lesser included offense as a crime the elements of which are a necessary subcomponent but not a sufficient component of elements of another crime, the greater included offense. The court gave the example of theft as a lesser included offense of robbery. *Williams,* 521 Pa. at 561, n. 2, 559 A.2d at 28, n. 2.

**2.** This court, *en banc,* wrestled with the question of what lesser included offenses are recently in *Commonwealth v. Anderson,* 416 Pa.Super. 203, 610 A.2d 1042 (1992) and *Commonwealth v. Wood,* 417 Pa.Super. 264, 612 A.2d 474 (1992). In both cases the court divided five to four on the question of whether aggravated assault is a lesser included offense of attempted murder. The majority held that the two should not merge for purposes of sentencing on grounds that the mental state of the actor is necessarily different to create criminal culpability in aggravated

This court held in *Commonwealth v. Voshall,* 387 Pa.Super. 47, 563 A.2d 936 (1989), *aff'd* 529 Pa. 571, 605 A.2d 1222 (1992) that driving under the influence was a lesser included offense in homicide by vehicle while driving under the influence; therefore, the sentences should merge. That decision was affirmed per curiam without decision after both *Burkhardt* and *Leon Williams (Erie)* were decided, but the Superior Court opinion was filed before *Burkhardt. Voshall,* therefore, does not help us resolve any conflict between the *Burkhardt* reasoning of legislative intent and the *Williams (Erie)* standard of merging only lesser included offenses.

I would reconcile the apparently divergent tests articulated in *Leon Williams (Erie)* and *Burkhardt* by holding that when the legislature makes a crime a lesser included offense the demand for clear legislative command is satisfied. In determining whether a crime is a lesser included offense of the primary charge, the sentencing judge need only determine if any of the crimes necessarily involve each other. *Voshall, supra.* Crimes necessarily involve each other when the only basis upon which a conviction may be predicated is the commission of the other crime. *Weakland, supra.*

Hutchinson appeals the failure to merge driving under the influence into homicide by vehicle while driving under the influence.[3] The statutory prohibition against driving under the influence, 75 Pa.C.S.A. § 3731 reads in pertinent part:

## § 3731. Driving under influence of alcohol or controlled substance

assault and in attempted murder. The majority reasoned that attempted murder was an inchoate crime and, under the facts of the case, the aggravated assault was a completed crime. Attempted murder and aggravated assault each requires a *different* specific intent. *Id.* at 222–24, 610 A.2d at 1052 (emphasis in original). The dissent argued that since the law is clear that aggravated assault is a lesser included offense in murder, it follows that it must be a lesser included offense in attempted murder. *Id.* at 228–30, 610 A.2d at 1055.

**3.** In fact, Hutchinson argues that it was ineffective assistance of counsel which led to the failure to object to separate sentencing on the two offenses. Since his claim goes to the legality of the sentence, failure to raise it in the trial court is not fatal to his appeal. *Commonwealth v. Dixon,* 344 Pa.Super. 293, 295, 496 A.2d 802, 802 (1985).

**(a) Offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle while: (1) under the influence of alcohol to a degree which renders the person incapable of safe driving;

\* \* \* \* \* \*

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

The offense of homicide by vehicle while driving under the influence, 75 Pa.C.S.A. § 3735, is defined by the Motor Vehicle Code as follows:

**§ 3735. Homicide by vehicle while driving under the influence**

**(a) Offense defined.**—Any person who unintentionally causes the death of another person as the direct result of a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) and who is convicted of violating § 3731 is guilty of a felony of the third degree when the violation is the cause of death and the sentencing court shall order the person to serve a minimum term of not less than three years.

The trial court sentenced Hutchinson separately on the conviction of driving under the influence and merged for sentencing purposes the conviction of homicide by vehicle while driving under the influence and homicide by vehicle. Since the statutory definition of homicide by vehicle while driving under the influence includes specific reference to and is predicated on a violation of the statute prohibiting driving under the influence, 75 Pa.C.S. § 3735, *supra,* I would find that the crimes necessarily involve each other. *Voshall, supra; Weakland, supra.* I would further conclude that this is a case in which driving under the influence is a lesser offense included in the greater and thus excepted from the abolition of the doctrine of merger. *Leon Williams, supra.*