544 A.2d 947

COMMONWEALTH of Pennsylvania, Appellee,

v.

John D. UHRINEK, Appellant.

Supreme Court of Pennsylvania.

Argued March 10, 1988.

Decided July 28, 1988.

Robert Davis Gleason, Thomas G. Johnson, Johnstown, for appellant.

William J. Martin, Dist. Atty., Philip C. Ursu, Asst. Dist. Atty., Paul A. Bell, II, Indiana, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION OF THE COURT

STOUT, Justice.

■ John D. Uhrinek appeals from the decision of the Superior Court that affirmed his jury conviction for homicide by vehicle, 363 Pa.Super. 643, 522 A.2d 663.[1] Because the trial court excluded evidence of the intoxication of the

---

1. 75 Pa.Cons.Stat.Ann. § 3732 (Purdon 1977 & Supp.1987). Appellant was also convicted of leaving the scene of an accident, *id.* § 3742 (Purdon 1977); reckless driving, *id.* § 3714; and driving at an unsafe speed, *id.* § 3361. The jury found appellant not guilty of driving on the wrong side of a highway, *id.* § 3301.

deceased pedestrian, which was relevant to appellant's theo-
ry of the cause of the accident, we reverse his homicide by
vehicle conviction and remand for a new trial.[2]

At approximately one o'clock on the morning of October
6, 1984, appellant was driving east on Oakland Avenue in
Indiana Borough. Oakland Avenue is located in the center
of the Indiana University campus. The roadway consists of
three lanes, one in each direction and a center, turning lane.
The speed limit at the section of the highway near the
intersection of Thirteenth and Oakland Avenues is posted at
twenty-five miles per hour. This section is a no passing
zone. Appellant struck and killed Curtis Goings, a pedestri-
an who was crossing Oakland Avenue with three friends,
James Griggs, Michael Mooney, and Robert Butler. After
the accident, appellant did not stop or attempt to aid the
victim.

At the trial, the Commonwealth's chief witness, an acci-
dent reconstruction expert, testified that, in his opinion,
appellant's car was traveling at a speed of fifty-one to
fifty-six miles per hour, that the point of impact was in the
center, turning lane, that the decedent was impacted while
in a "running mode," and that appellant had been traveling
in his legal lane but swerved left into the center lane,
striking Goings, as a result of a panic stress reaction. N.T.
of 2–19–85 (No. 497 Crim.1984) at 113, 121–25, 140–41. A
pathologist also testified for the Commonwealth that Go-
ings died as a result of the injuries he sustained in the
accident. *Id.* at 41, 48.

The defense testimony consisted of Messrs. Griggs and
Mooney, who were with Goings at the time of the accident.[3]
They testified that along with Robert Butler, they had just

---

**2.** Appellant's contention that a mistrial was required because a police
detective testified that appellant had been drinking on the night of the
accident is without merit. The Commonwealth did not deliberately
elicit the testimony, or refer to it further. In addition, the trial judge
promptly instructed the jury to disregard the statement. *See Com-
monwealth v. Pursell,* 508 Pa. 212, 495 A.2d 183 (1985).

**3.** Robert Butler was in the army at the time of the trial and did not
testify.

come from a party and were crossing Oakland Avenue outside of the legal crosswalk, and that they were crossing against the light. They further testified that Goings seemed distracted by a playful argument he was having with Butler, and that he had sunglasses. Griggs also testified that he saw Goings running across the street. Neither could specify the exact point of impact.

Appellant testified that he was driving at thirty-five miles per hour down Oakland Avenue when four or five people suddenly crossed the street between intersections right in front of his car. He turned his car to avoid a collision, heard a thump, panicked, and left the scene of the accident. *Id.* at 311–13.

Appellant attempted to submit evidence to show that Goings was intoxicated at the time of the accident:

MR. JOHNSON [defense counsel]: I intend in furtherance of my offer with Mr. Griggs and Mr. Mooney to ask them questions regarding the amount of alcohol that Curtis Goings consumed. In furtherance of that, I intend to call Lloyd Howard from the Borough of Laboratories, Department of Health to show that he, in fact, pursuant to a request by the Indiana coroner did a blood test on the decedent, Curtis Goings, and found that his blood alcohol was .102.

In furtherance of that, I intend to call an expert witness to testify that it is a fact within the acceptable degree of medical certainty that when someone has a .102 percent blood alcohol that a number of very recognizable, ascertainable, and precise conditions can be present in an individual that has a .10 percent blood alcohol, the effect that such percentage would have on the condition of the decedent and specifically the condition of the decedent with regards to his ability to perceive things and to utilize his motor reflexes and his response time.

. . . .

MR. OLSEN [Commonwealth counsel]: ... Mr. Johnson, I believe, would have to go a step further and demonstrate it was the presence of any alcohol in the bloodstream of Curtis Goings and not some other factors which

caused Curtis Goings to step out and jaywalk in front of [appellant's] vehicle. I will state I have an objection to that portion of the offer for Griggs and Mr. Mooney dealing with alcohol consumption of Curtis Goings. I object at that point also to any testimony regarding blood alcohol level as determined by any laboratory of Curtis Goings.

*Id.* at 237–38, 242.

The trial judge sustained the Commonwealth's objection to "any testimony of blood alcohol or any expert's testimony as to lack of motor reflexes when a person reaches a certain level." *Id.* at 242. Appellant was subsequently convicted, and sentenced to a term of not less than six nor more than twenty-three months imprisonment, to be followed by a year's probation.

Relying on the trial court's conclusion that the evidence of intoxication was inadmissible, a divided Superior Court affirmed. The trial court based its decision to exclude the evidence on *Kriner v. McDonald,* 223 Pa.Super. 531, 302 A.2d 392 (1973). *Kriner* articulated the general rule on the admissibility of evidence of a pedestrian's intoxication in a civil case:

[E]vidence tending to establish intoxication on the part of a pedestrian is inadmissible unless such evidence proves *unfitness to be crossing the street.*

. . . .

Consequently, no reference should be made to a pedestrian's use of alcohol unless there is evidence of intoxication or copious drinking on the part of the pedestrian; for example, evidence that the injured party was staggering or had liquor on his breath gives support to such an inference. *Cook v. Philadelphia Transportation Co.,* 414 Pa. 154, 158, 199 A.2d 446 (1964).

*Kriner,* 223 Pa.Super. at 533–34, 302 A.2d at 394 (emphasis added).

The "unfitness to walk" standard articulated in *Kriner* derives from civil cases where the issue was whether the driver of an automobile was reckless or negligent, i.e.,

"unfit to drive." *See Fisher v. Dye*, 386 Pa. 141, 148, 125 A.2d 472, 476 (1956). In *Critzer v. Donovan*, 289 Pa. 381, 137 A. 665 (1927), this Court explained the potential for prejudice that supports the "unfitness to drive" rule as follows:

Certainly if the driver was not intoxicated or driving while under the influence of liquor, the fact that he may have taken a drink has no bearing on the question of his negligence. Such testimony directly tends to raise in the minds of the jurors another issue,—whether he was intoxicated,—which, in the absence of other evidence, should not have entered into the determination of the case.

*Id.*, 289 Pa. at 385, 137 A. at 666. *See also Vignoli v. Standard Motor Freight Inc.*, 418 Pa. 214, 218, 210 A.2d 271, 273 (1965) ("In circumstances where the jury could not reasonably reach a finding of intoxication, it is highly prejudicial to permit it to hear evidence bearing on the subject.").

Courts in this Commonwealth have applied the *Kriner* standard in civil cases where the issue was whether one party was either negligent or contributorily negligent.[4] These cases, however, are distinguishable in that the

---

**4.** *See, e.g., Hawthorne v. Dravo Corp.*, 352 Pa.Super. 359, 508 A.2d 298 (1986) (wrongful death and survival action; contributory negligence of driver); *Ackerman v. Delcomico*, 336 Pa.Super. 569, 486 A.2d 410 (1984) (action for damages; contributory negligence of pedestrian); *Couts v. Ghion*, 281 Pa.Super. 135, 421 A.2d 1184 (1980) (plurality opinion) (wrongful death and survival action; negligence of driver). *See also Sentz v. Dixon*, 224 Pa.Super. 70, 73, 302 A.2d 434, 436 (1973) (whether "[pedestrian was] intoxicated to a degree showing recklessness or carelessness which might relieve [driver] of liability due to [pedestrian's] contributory negligence." (emphasis omitted)).

Courts in Pennsylvania have applied this rule when considering the admissibility of a party's blood alcohol level. For example, in *Billow v. Farmers Trust Co.*, 438 Pa. 514, 266 A.2d 92 (1970), the Court affirmed the lower court's exclusion of proffered testimony of a doctor "who apparently would have stated that, in his opinion, a man with a blood alcohol content of .14 would be *affected* in his driving." *Id.*, 438 Pa. at 516, 266 A.2d at 93 (emphasis added). The Court held that such testimony, by itself, "falls short of the requirement that the evidence show 'a degree of intoxication which proves unfitness to drive.'" *Id.*, 438 Pa. at 517, 266 A.2d at 93 (quoting *Fisher v. Dye, supra*). On the other hand, in *Cusatis v. Reichert*, 267 Pa.Super. 247,

present case is criminal, not civil.[5]  This Court has recently articulated the important individual interest in presenting a defense in a criminal case.  In *Commonwealth v. Eubanks,* 511 Pa. 201, 512 A.2d 619 (1986), we noted that considerations which require that prior convictions be excluded from evidence against a defendant, except for convictions involving crimen falsi, are not applicable to the question of what prior convictions may be admitted in evidence against a complaining witness.  In permitting the introduction of a prior murder conviction against the complaining witness, we employed a relevancy test.  We stated:

> *[I]n the context of a criminal defense,* such evidence is admissible because it makes the defendant's version "more probable than it would be without" evidence of the conviction.  Admittedly, admission of such evidence may, to some degree, smear the complaining witness in the eyes of the jury.  But the complaining witness is not on trial; her liberty is not at stake.

*Id.,* 511 Pa. at 208, 512 A.2d at 623 (emphasis added).

In addition, unlike in the civil context, the issue before the jury in the instant case was not negligence or contributory

406 A.2d 787 (1979), the Superior Court held that the lower court had improperly excluded evidence of intoxication, including the results of a Breathalyzer test, where there was evidence that the defendant had consumed a considerable amount of alcohol prior to the incident, and had the odor of alcohol about him when the investigating officer arrived at the scene.

5.  Commentators have noted the differing societal functions of the civil and criminal laws, as well as their stigma on members of society. The aim of the criminal law is to protect the public against harm by punishing conduct.  The function of tort law is to compensate someone for harm that he or she has suffered.  *See* 1 W. Lafave & A. Scott, *Substantive Criminal Law* § 1.3, at 17 (1986).  As a result, "even aside from differences in moral condemnation, it would seem that criminal punishment, with its emphasis on imprisonment, is on the whole more drastic than the sanctions, with emphasis on paying money, imposed by the civil law...."  *Id.* at 16–17.  A conviction for vehicular homicide carries such a moral condemnation.  *See Commonwealth v. Heck,* 341 Pa.Super. 183, 205, 491 A.2d 212, 223 (1985) ("a conviction for violating the vehicular homicide law carries with it the stamp of criminality and the kind of opprobrium that under the common law was reserved for true crimes or moral turpitude."), *aff'd,* 517 Pa. 192, 535 A.2d 575 (1987).

negligence, but rather causation.[6] The homicide by vehicle statute provides:

> Any person who unintentionally *causes* the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic ... is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the *cause* of death.

75 Pa.Cons.Stat.Ann. § 3732 (Purdon 1977 & Supp.1987) (emphasis added).

■ The Commonwealth must prove three elements in order to support a conviction of vehicular homicide: (1) the defendant drove in a manner that violated the Motor Vehicle Code; (2) defendant knew or should have known that his conduct violated the law; and (3) the death was the probable result of the Motor Vehicle Code violation. *Commonwealth v. Moretti*, 358 Pa.Super. 141, 516 A.2d 1222 (1986). "Under the homicide by vehicle statute, culpability is to be determined in each given case in light of the particular facts surrounding the Vehicle Code violation on which the homicide by vehicle charge is predicated, and a determination must be made as to whether death was a *probable consequence* of the defendant's conduct." *Commonwealth v. Jumper*, 511 Pa. 446, 449–50, 515 A.2d 540, 541 (1986) (emphasis added). *See Commonwealth v. Hicks*, 502 Pa. 344, 347–48, 466 A.2d 613, 615 (1983), *cert. denied*, 465 U.S. 1015, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984); *Commonwealth v. Field*, 490 Pa. 519, 525, 417 A.2d 160, 163 (1980). The Commonwealth must prove each element of the offense, including the causal connection between death and the wrongful act, beyond a reasonable doubt. *Commonwealth v. Floyd*, 499 Pa. 316, 453 A.2d 326 (1982); *Commonwealth v. Kostra*, 349 Pa.Super. 89, 502 A.2d 1287

---

6. Commentators have attached the theory, offered by the Commonwealth in the instant case, that a victim's conduct is not relevant to the cause of death. *See, e.g.,* 1. W. Lafave & A. Scott, *supra*, § 5.11, at 693; 1 C. Torcia, *Wharton's Criminal Law* § 47, at 235–37 (14th ed. 1978).

(1985). In addition, the causation theory properly applied in criminal cases is not the same as the civil "proximate cause" standard. The defendant's conduct must be a direct and substantial cause of the injury. *See Commonwealth v. Stafford*, 451 Pa. 95, 301 A.2d 600 (1973); *Commonwealth v. Paquette*, 451 Pa. 250, 301 A.2d 837 (1973). *See also Commonwealth v. Lang*, 285 Pa.Super. 34, 43, 426 A.2d 691, 695 (1981) ("[T]he tort liability concept of proximate cause has no proper place in prosecutions for criminal homicide and more direct causal connection is required for conviction." (quoting *Commonwealth v. Root*, 403 Pa. 571, 580, 170 A.2d 310, 314 (1961))).

Unlike in civil cases, the issue of the admissibility of decedent intoxication in criminal cases is relatively novel. One case that has addressed the issue in the Commonwealth is *Commonwealth v. Todaro*, 301 Pa.Super. 1, 446 A.2d 1305 (1982). There, the trial court refused to allow introduction of evidence of alcohol in a deceased driver's blood where the defendant was charged with involuntary manslaughter, recklessly endangering another person, and driving under the influence. In *Todaro* the Superior Court made no attempt to determine admissibility based on the civil standard articulated in *Kriner*. Rather, as in *Eubanks, supra*, the court applied a relevancy test.[7] The evidence of the decedent's intoxication was irrelevant and therefore inadmissible:

7. Very few other jurisdictions have addressed the issue of pedestrian intoxication in the criminal context. Those that have, however, have struggled with a relevancy test. *See, e.g., Everrett v. State*, 435 So.2d 955, 960, 961 (Fla.App.1983) (Smith, J., concurring):

 If ... it is deemed irrelevant, that the decedent jaywalked into the path of defendant's vehicle and, let us say, lay down drunk in the street, then that proof would also seem irrelevant, except as it is unavoidably and narrowly adduced to show that a fatal accident in fact occurred. Yet we know this proof is not irrelevant.
 ....
 Because I consider that this pedestrian's conduct was relevant in the determination of the defendant's culpability and its causative effect in the pedestrian's death, I think the pedestrian's alleged intoxication, influencing his conduct, was also within the bounds of relevancy.

The theory of the prosecution was that the accident occurred in the southbound lane of traffic and was caused by appellant who was driving in that lane.... Our examination of the record indicates that as the lower court found, there is no evidence to support the inference that the accident was caused by the deceased or that it occurred in the northbound lane. Of course, the burden of proof is on the prosecution to show that appellant caused the accident. Appellant need not demonstrate that it occurred in another way. However, while the burden of proof is not on appellant, he still cannot introduce evidence which does not help to prove a desired inference. Evidence of blood alcohol, alone, does not support any inference as to the cause of the accident. It was not relevant to any issue before the court.

*Todaro*, 301 Pa.Super. at 4, 446 A.2d at 1306.

We believe that the trial court should admit evidence of a pedestrian's intoxication, if relevant, only if that evidence is supported by expert testimony that explains the manner by which alcohol affects one's motor reflexes and sense of judgment. Since such testimony would help the jury to understand a material element of the crime, namely, causation, and would concern physiological effects that are beyond the knowledge of the average person, it is properly the subject of expert testimony. *See Reardon v. Meehan*, 424 Pa. 460, 227 A.2d 667 (1967); *Beary v. Container General Corp.*, 368 Pa.Super. 61, 533 A.2d 716 (1987).

▮ In the instant case, the appellant sought to demonstrate that the decedent had caused the accident. According to the appellant's theory, the decedent was wearing sunglasses at approximately one in the morning, had just left a party, and caused the accident by suddenly jaywalking into the path of appellant's car with disregard for his safety due to his intoxication. In the words of Judge Del Sole, who dissented from the Superior Court opinion, "[e]vidence of the decedent's intoxication renders the inference, that it was his own disregard for safety which caused the accident, more probable than it would be without the evi-

dence." Superior Court slip op. at 8 (Del Sole, J., dissenting). The trial court's refusal to permit the appellant to introduce evidence of the decedent's intoxication, where the appellant was prepared to support his theory with expert testimony, prevented him from challenging the causal connection between his conduct and the accident, a direct connection that the Commonwealth must prove beyond a reasonable doubt. "An accused has a fundamental right to present defensive evidence so long as such evidence is relevant and not excluded by an established evidentiary rule." *Commonwealth v. Eubanks, supra,* 511 Pa. at 209–10, 512 A.2d at 624 (quoting *Commonwealth v. Greene,* 469 Pa. 399, 405, 366 A.2d 234, 237 (1976)). Once it is determined that the proffered evidence was relevant, due process requires its admission. "Even the most myopic interpretation of [Article I, Section 9 of the Pennsylvania Constitution] would necessarily concede the right to offer relevant evidence to challenge a material issue of fact." *Commonwealth v. Graves,* 461 Pa. 118, 126 n. 7, 334 A.2d 661, 667 n. 7 (1975), *superseded on other grounds,* 18 Pa.Cons.Stat.Ann. § 308 (Purdon 1983). "Causation is an issue of fact for the jury." *Commonwealth v. Kostra, supra,* 349 Pa.Super. at 93, 502 A.2d at 1289.

▪ Therefore, we hold that evidence of a deceased pedestrian's intoxication is admissible in a homicide by vehicle prosecution, if relevant to the defendant's theory of the cause of the accident and if supported by expert testimony, even absent any showing that the decedent was "unfit to walk."

Reversed and remanded.

LARSEN, J., files a dissenting opinion.

PAPADAKOS, J., files a dissenting opinion in which McDERMOTT, J., joins.

LARSEN, Justice, dissenting.

I dissent.

Evidence regarding the intoxication of a victim should *never* be relevant when a defendant is charged with homicide by vehicle. 75 Pa.C.S.A. § 3732. It is the *behavior* of a victim which is of relevance to the element of causation, and the behavior of the victim in this case was fully presented to the jury. What motivates such behavior, however, is entirely irrelevant. I do not believe that a driver who kills a pedestrian, who may be intoxicated, while that driver operates his or her vehicle in a manner which violates the Motor Vehicle Code, is any less culpable than a driver who kills a pedestrian suddenly stricken by an epileptic seizure.

Accordingly, I would affirm the order of Superior Court, affirming the judgment of sentence.

PAPADAKOS, Justice, dissenting.

I dissent from the majority opinion essentially because I am convinced by the facts and applicable law of this case that evidence of the victim's intoxication is not relevant.

The facts indicate that the Appellant, exceeding the speed limit, illegally drove his car into a center turning lane where the victim was struck and killed. As the majority notes, the Appellant also suffered a "panic stress reaction" at that time. The Appellant now claims that he is entitled to offer proof of the victim's own intoxication in order to demonstrate that the victim fell into the path of his car rather than the driver running down the victim. In effect, the Appellant seeks to prove under the Motor Vehicle Code that the death was not the probable result of a Code violation.

The majority opinion, nevertheless, engages in perverse logic. Under the proposed rationale, the Appellant would be allowed to introduce evidence of the victim's intoxication, *although* the central issue is whether the victim fell in front of the car. In order to make the evidence of intoxication relevant, however, the Appellant must make at least an offer of proof that the victim actually fell in front of him. Only then would the evidence of intoxication and the fall connect in a coherent manner. The majority would have us

believe that because the victim was intoxicated, it could be reasonably inferred by a jury that he caused his own death. Such argument makes no sense, and I presume that the trial judge came to the same conclusion for the same reason. The mere fact of the victim's intoxication becomes relevant as a matter of law only where there is proof in the first place that the victim himself fell into the path of the swerving car. At that point, the victim's intoxication would be used to explain the basis of the fall.

The majority has the logic backwards and, for that reason, I must register my disagreement.

McDERMOTT, J., joins this dissenting opinion.