631 A.2d 1040

**COMMONWEALTH of Pennsylvania**

v.

**John MOLINARO, Appellant.**

Superior Court of Pennsylvania.

Argued May 11, 1993.

Filed Sept. 24, 1993.

Casey A. Castro, Bradford, CT, for appellant.

William P. O'Malley, Asst. Dist. Atty., Scranton, for Com., appellee.

Before BECK, POPOVICH and HESTER, JJ.

HESTER, Judge:

John Molinaro appeals from the judgment of sentence of three to six years imprisonment imposed following his conviction by a jury of homicide by vehicle while driving under the influence and driving while under the influence. We reverse and remand for a new trial.

The trial evidence reveals the following. On February 18, 1990, shortly after 1:00 a.m., a 1979 Chevrolet pick-up truck driven by appellant struck and killed the victim, Thomas Miller. Glenn Evans, an eyewitness to the accident, was watching television in his home on Route 106 in Carbondale. Mr. Evans heard tires squeal, looked out the window, and observed the victim's car with its lights illuminated resting

perpendicularly across the road.[1]   After Mr. Miller unsuccessfully attempted to start the car, he extinguished its headlights. Mr. Evans, expecting Mr. Miller to ask to use the telephone, started to put on his shoes.   He again heard tires squealing and looked up to see the car stalled again but resting closer to the shoulder of the road.   Mr. Evans then observed a car proceed slowly around the victim's vehicle in the westbound lane of the roadway, which was free from obstruction.   As Mr. Evans finished putting on his shoes, he heard tires squeal again and then a crash.   When he looked out the window, he saw the headlights of appellant's truck coming over an embankment towards his house and the victim spinning next to the truck.   Mr. Evans discovered the victim under the front tires of appellant's truck.

David Zrowka, Chief of the Fell Township Police Department, testified that at the scene of the accident, appellant admitted to drinking two beers and three mixed drinks at a local restaurant prior to the incident.   Appellant also stated that he saw the victim's car sitting broadside across the road and as he swerved to miss the car, he saw a person and was not able to avoid striking him.   In a later interview with Chief Zrowka, appellant admitted that after he went to the restaurant, he drank a couple of beers at a local bar.   Appellant also stated that he was traveling forty miles per hour at the time of the accident.   A blood alcohol content test was performed, and the results were that appellant's blood alcohol content was 0.34%.

Pennsylvania State Trooper Joseph Hudak, an expert in accident reconstruction, concluded that a driver in the type of vehicle appellant was driving on the night of the accident would have been able to see the victim's vehicle, with its lights extinguished, in the roadway from a distance of 460 feet. Officer Hudak also concluded that a driver traveling at a speed of between thirty and sixty miles per hour should have

1. The evidence indicates that Thomas Miller had a blood alcohol content reading of .18%, which may have contributed to his traffic accident.

been able either to stop his vehicle or to swerve into the unobstructed lane to avoid the victim's vehicle.

Based on this evidence, appellant was convicted of homicide by motor vehicle while under the influence of alcohol and driving under the influence. This appeal followed denial of post-trial motions and imposition of judgment of sentence.

■■■ We consider first appellant's allegation that the evidence was insufficient to sustain his convictions since if the allegation were meritorious, it would entitle him to discharge.[2]

We begin with the familiar and well established admonition that our standard of review for challenges to the sufficiency of evidence is limited. We must determine whether, viewing all the evidence at trial, as well as all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense was proven beyond a reasonable doubt. Both direct and circumstantial evidence receive equal weight when assessing the sufficiency of the evidence. All reasonable inferences, consistent with the evidence, must be viewed in the Commonwealth's favor as verdict winner.

*Commonwealth v. Grekis,* 411 Pa.Super. 494, 504-05, 601 A.2d 1275, 1280 (1992) (citations omitted). It is within the province of the fact finder to determine the weight to be given to each witness's testimony and to believe all, part, or none of the evidence. *Commonwealth v. Parker,* 387 Pa.Super. 415, 564 A.2d 246 (1989).

Appellant's specific allegation is that the evidence was not sufficient to show that his intoxication was the cause of the traffic accident and therefore, of the victim's death. This argument relates to appellant's conviction of homicide by

2. The Commonwealth asks that we decline to review the merits of this appeal since appellant's brief contains various violations of the rules of appellate procedure. Normally, we will deny a defendant his constitutional right to direct review of his conviction when there are gross deviations from the rules of appellate procedure which impair substantially our ability to review the issues presented. *Commonwealth v. Taylor,* 306 Pa.Super. 1, 451 A.2d 1360 (1982). As appellant's issues are discernable, we elect to address the merits of this appeal.

vehicle while driving under the influence, 75 Pa.C.S.A. § 3735, which is defined as follows:

(a) **Offense defined.**—Any person who unintentionally causes the death of another person as the direct result of a violation of section 3531 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3731 is guilty of a felony of the third degree when the violation is the cause of death and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years.

Thus, there are three elements to homicide by vehicle while driving under the influence: a driving under the influence conviction, the death of another person, and the death as a direct result of driving under the influence. Appellant challenges the evidence only with respect to the third element, suggesting that the evidence establishes that the accident would have occurred regardless of the state of his intoxication.

Viewing the evidence in a light most favorable to the Commonwealth, we have no doubt that appellant drove, operated, or controlled his vehicle with an amount of alcohol in his blood exceeding 0.10%. Glenn Evans identified appellant as the person who exited the driver's side of the truck. Additionally, Chief Zrowka testified that appellant stated that he was the operator of the vehicle. Chief Zrowka testified that appellant voluntarily agreed to take a blood alcohol test, and Dr. Arthur Sevum's testimony revealed that appellant's blood contained 0.343% ethyl alcohol. Dr. William Antognoli testified that multiple traumatic injuries were the cause of death of the victim. Finally, Trooper Hudak's expert testimony was sufficient to establish that appellant's intoxication caused the accident. Officer Hudak stated that a driver not under the influence of alcohol would have perceived the victim's vehicle and stopped or swerved to avoid the accident. This conclusion was confirmed by Mr. Evans's testimony that another vehicle had avoided, without incident, the victim's vehicle immediately prior to the accident. Based on the foregoing, we find there was sufficient evidence for the jury to find that appellant's

intoxication was a direct and substantial cause of the accident and of the victim's death.

■ Appellant also levels a challenge to the propriety of the jury instruction.[3] Appellant's specific contentions are that: 1) the trial court's instruction on causation were in error since the jury was told to disregard any impact that the victim's conduct had in causing the accident; and 2) the trial court erred in failing to give Pennsylvania Suggested Standard Criminal Jury Instruction 15.2501C(3). He asserts that under controlling case law, the jury should have been instructed to consider the victim's actions in connection with its determination of whether appellant's conduct was the direct and substantial cause of the victim's death. We are constrained to agree with appellant's contentions and reverse and remand for a new trial. In the present case, the jury was instructed as follows:

> In a criminal case, you are not to concern yourselves with the actions of the victim. Contributory negligence of the victim is not a defense to a criminal charge of homicide by motor vehicle if you find that the defendant's actions were a substantial factor in causing death.

Notes of Testimony, 5/2/91 (Jury Instructions), at 80.[4] At no point was the jury instructed that the victim's conduct should be considered in connection with the causation issue.

This instruction contains an inaccurate statement of the applicable law. Under the case law, the jury must be instruct-

3. The Commonwealth also suggests at one point in its brief that appellant failed to object to the jury instructions at trial. This is incorrect. Our review of the in-chambers discussion of the proposed jury instructions establishes that defense counsel objected strenuously to the trial court's proposal to charge the jury to disregard the victim's actions in connection with causation. Counsel also specifically requested the trial court to charge the jury in accordance with Pennsylvania Suggested Standard Criminal Jury Instructions 15.2501C(3). *See* Notes of Testimony, 5/2/91 (In-Chambers Transcript), at 2, 7.

4. There are three notes of testimony bearing the date of May 2, 1991. One contains the in-chambers discussion of the proposed jury instructions; one contains the jury instructions, and one contains the trial court's response to several questions concerning causation asked by the jury.

ed to consider the victim's actions in connection with the causation determination, where the evidence indicates that those actions may have contributed to the accident. In *Commonwealth v. Aurick*, 138 Pa.Super. 180, 10 A.2d 22 (1939), the victim was killed while crossing a street at dusk. The defendant was convicted of involuntary manslaughter as a result of her death. On appeal, the defendant argued that the trial court erred in failing to instruct the jury that the decedent's · conduct should be considered in connection with the determination of whether her death was the direct result of the defendant's violation of the speeding laws. We agreed with that assignment of error.

██ The concept presented is that where the conduct of the victim may have contributed to an accident, the jury is to be instructed to **consider** such conduct when deciding the issue of whether a defendant's violation of the law was the direct and substantial cause of the accident and thus the victim's death. This concept is delineated clearly in Pennsylvania Suggested Standard Jury Instruction 15.2501C(3):

(1) You cannot find that the defendant killed [the victim] unless you are satisfied beyond a reasonable doubt that the defendant's conduct was a direct cause of his death.

(2) In order to be a direct cause of a death, a person's conduct must be a direct and substantial factor in bringing about the death.[5] There can be more than one direct cause of a death. A defendant who is a direct cause of a death may be criminally liable even though there are other direct causes.

(3) A defendant is not a direct cause of a death if the actions of the victim ... plays such an independent important and overriding role in bringing about the death, compared with the role of the defendant, that the defendant's

5. We observe that the trial court also failed to advise the jury that the defendant's conduct must be a direct *and substantial* cause of the victim's death. *See* N.T., 5/2/91 (Jury Instructions, at 84. This also was error. *See Commonwealth v. Rementer*, 410 Pa.Super. 9, 598 A.2d 1300 (1991).

conduct does not amount to a direct and substantial factor in bringing about the death.

In the present case, there was evidence that the victim's conduct contributed to the accident. The victim had a blood alcohol content of .18% and was not able to negotiate the highway where the accident occurred. He stalled his car, extinguished the headlights, and then proceeded out into the roadway at night without taking proper precautions. Under *Aurick*, where the evidence is that the victim's conduct may have contributed to the accident, the jury must be instructed to consider such conduct when making its determination as to whether the defendant's conduct was a substantial and direct factor in causing the victim's death. The jury in this case was not instructed to consider the victim's conduct in this determination; it specifically was instructed to disregard it.

We also agree with appellant's observation that this instruction conflicts with our Supreme Court's holding in *Commonwealth v. Uhrinek*, 518 Pa. 532, 544 A.2d 947 (1988). There, our Supreme Court held that it was error to disallow the defendant to introduce evidence which tended to establish that the victim's conduct may have contributed to his death. In *Uhrinek*, the defendant struck a victim who was crossing the road at night. The evidence indicated that the victim was intoxicated and that this intoxication may have contributed to the accident. The Supreme Court reversed the trial court's ruling that evidence of the victim's intoxication was inadmissible, holding that if the evidence establishes that the intoxication may have contributed to the accident, such evidence must be admitted.

Like the victim in *Uhrinek*, the victim herein was intoxicated and exhibited conduct which may have contributed to the accident. The intent of *Uhrinek*, is not fulfilled if the jury, having received evidence that the victim's conduct may have contributed to his death, is then instructed specifically to disregard that evidence.

In the present case, the trial court relied upon our holding in *Commonwealth v. Heck*, 341 Pa.Super. 183, 491 A.2d 212

(1985), *aff'd*, 517 Pa. 192, 535 A.2d 575 (1987), in refusing to give the requested instruction. In *Heck*, we ruled that criminal culpability for a violation of the Motor Vehicle Code in the context of a vehicular homicide prosecution cannot be predicated upon ordinary negligence, but there must be a gross deviation from the applicable standard of care. In support of this conclusion, we offered three examples of when a negligent violation of the MVC would result in an unintended death and when criminal sanctions would not be appropriate but when those sanctions nonetheless would be imposed. After offering the examples, we observed that any contributory negligence on the part of the victim would not absolve the defendant from responsibility. The statement was made in the context of the examples and only to support our holding that it is fundamentally unfair to impose criminal sanctions where a defendant has not deviated grossly from the applicable standard of care. *Heck* does *not* hold that the victim's contributory negligence is not relevant and must be *disregarded* in connection with the determination of whether the defendant's conduct was a direct and substantial factor in causing the accident. Finally, our Supreme Court expressly rejected our analysis in *Heck* and supplanted it with its own analysis. Accordingly, our opinion in *Heck* cannot be relied upon.

In fact, *Heck* cites the case of *Commonwealth v. Clowser*, 212 Pa.Super. 208, 239 A.2d 870 (1968), in support of the proposition that contributory negligence of the victim is not a defense to vehicular homicide. In *Clowser*, we did state that a victim's contributory negligence is no absolute *defense* in such a case, but we went on to observe that the victim's contributory negligence does *diminish* the defendant's responsibility as the legal cause of an accident.

Thus, while it is correct to state that the contributory negligence of the victim is not a defense to a criminal charge of homicide by vehicle if the defendant's actions are a substantial factor in causing death, this statement in itself contains an incomplete analysis of the applicable law. Where the evidence supports such an instruction, the jury also must be instructed in accordance with the concepts outlined in *Uhrinek, Aurick,*

and Pa.S.Crim.J.I. 18.2501c(3). Since the evidence in this case supported the requested instruction, the trial court erred in failing to give it. In addition, the error was compounded by the trial court's incorrect statement that the jury was not to concern itself with the victim's actions. Under the circumstances, appellant is entitled to a new trial.

Judgment of sentence reversed. Case remanded. Jurisdiction relinquished.