J-S53003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DANTE BROWN | : | |
| | : | |
| Appellant | : | No. 667 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 27, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006326-2017

BEFORE:   SHOGAN, J., LAZARUS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SHOGAN, J.:                                Filed: April 1, 2021

Appellant, Dante Brown, appeals from the judgment of sentence entered on January 27, 2020.  Following a bifurcated trial, a jury found Appellant guilty of carrying a firearm without a license and carrying a firearm in public in Philadelphia.[1]  On the same date, the trial court found Appellant guilty of persons not to possess a firearm.[2]  After careful review, we affirm.

The trial court set forth the following factual history:

On May 15, 2017, around 2:30 a.m., Ryan Lowry (the complainant, herein "Lowry") pulled into the drive-through line at McDonald's, located at 3725 Aramingo Avenue in Philadelphia. (N.T. 11/13/19 at 124).  Lowry admitted that, earlier that night, he started drinking alcohol around 8:45 p.m. and stopped drinking

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 6106(a)(1) and 6108, respectively.

[2] 18 Pa.C.S. § 6105(a)(1).

around 1:30 a.m. (Id. at 134). He explained that he consumed about five ten-ounce cans of Miller Lite beers and four to six shots of whiskey. (Id.). Lowry testified that when he pulled into McDonald's, he "abruptly" stopped in line behind Appellant's vehicle, a 2002 Chevy Trailblazer. (Id. at 125-26, 113). Immediately thereafter, Appellant exited his vehicle and accused Lowry of striking his SUV. (Id. at 125). Although Lowry did not observe any damage on Appellant's vehicle, he apologized and offered Appellant forty dollars to pay for his and his passenger's meal. (Id.). The two briefly argued, and Appellant returned to his vehicle. (Id.). After a few minutes, Appellant again exited his vehicle, aggressively approached Lowry, and demanded $100. (Id. at 126).

After a second argument ensued, Lowry stepped out of his vehicle to confront Appellant. (Id. at 127). Lowry[,] who was an armed, off-duty Pennsylvania State Trooper at the time[,] testified that he removed his holstered handgun from his waistband, opened the rear driver's–side door, and threw the weapon on the floorboard. (Id.). Lowry closed the door and put his hands in a "fighting stance." (Id. at 52, 127). Appellant quickly circled around Lowry's vehicle, dove across the back seat, and grabbed Lowry's firearm (Id. at 127). Lowry immediately attempted to retrieve the weapon. (Id.). The two "tussled" for control of the firearm (Id. at 53-54), but Appellant maintained his possession of the weapon. (Id. at 127). Appellant, who was still holding the gun, ran to his vehicle and fled the scene. (Id. at 128). Lowry returned to his vehicle and followed Appellant. (Id. at 129).

An independent eyewitness, Darryl Barkley ("Barkley"), testified to a nearly identical set of facts. Barkley stated that he pulled into the McDonald's drive-through directly behind Lowry. (Id. at 48). Barkley testified that when he arrived, Lowry and Appellant were speaking to each other with "escalated" voices. (Id. at 49). Barkley saw both men return to their vehicles. (Id.). A few minutes later, [Barkley] saw Appellant and Lowry engaged in a second argument outside of Lowry's vehicle. (Id. at 50). [Barkley] testified that he saw Lowry lift his shirt, which enabled him to see Lowry's holstered gun. (Id. at 51). Upon realizing that Lowry was armed, [Barkley] called 9-1-1. (Id. at 52).

[Barkley] continued to observe the altercation as he spoke to the emergency dispatcher. (Id. at [53-54]).  He testified that he saw Lowry remove his firearm and throw it in his car, before approaching Appellant in a "fighting stance." (Id. at 52).  [Barkley] explained that Appellant briefly "approached" Lowry but quickly circled around him, opened the car door, and grabbed Lowry's gun. (Id.).  [Barkley] then witnessed the two men "tussl[e]" for control of the weapon, (Id. at [53]).  When Lowry and Appellant drove out of the McDonald's parking lot, [Barkley] followed. (Id. at 55).  [Barkley] stayed on the phone with the 911 dispatcher and provided details on the evolving location of the chase. (Id. at 56-62).

All three vehicles drove from McDonald's, turned onto Richmond Street, and continued west on Tioga Street. (Id. at 61, 85, 129).  The chase ended when the parties saw police vehicles with activated overhead lights driving east on Tioga Street. (Id. at 85, 129).  Once all three vehicles stopped and police arrived, [Barkley] pointed to Appellant's vehicle and told officers that he was "the guy" with the gun. (Id. at 63).  Officer William Eiser ("Officer Eiser") and Officer Joseph Payeski ("Officer Payeski") ordered Appellant and his female passenger (who identified herself as Appellant's girlfriend) out of the vehicle. (Id. at 86-87[, 105]).  Officer Payeski recovered Lowry's firearm from the driver's seat of Appellant's vehicle and placed it on property receipt #3302541. (Id. at 105; Comm. Ex. 5).  Officer Payeski also completed an accident report, noting that there was "no visible damage" to either vehicle. (Id. at 112-14).

Officers arrested Appellant and Lowry. (Id. at 90-91).  Although no officer administered a sobriety test, Lowry was arrested for a suspected [driving under the influence ("DUI")]. (Id. at 90).  Officers transported Lowry to the Police Detention Unit, where he submitted to a breathalyzer test, which revealed a .18 blood alcohol content ("BAC"). (Id. at 140-41).  Lowry was later accepted into Veteran's Court, a diversionary program, and successfully completed that program. (Comm. Mot. at 3).  He was discharged from supervision on May 17, 2018. (Comm. Mot. at 3).

Trial Court Opinion, 7/17/20, at 2-4.

Following a bifurcated trial, the jury found Appellant guilty of carrying a firearm without a license and carrying a firearm in public in Philadelphia. On the same date, following a waiver trial, the court found Appellant guilty of persons not to possess a firearm.[3] On January 27, 2020, the court sentenced Appellant to five to ten years of incarceration for persons not to possess a firearm and three years of probation for carrying a firearm without a license. Order of Sentence, 1/27/20. No further penalty was imposed for carrying a firearm in public in Philadelphia. Appellant filed a notice of appeal on February 14, 2020. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. Order, 3/16/20. After seeking and receiving an extension of time to file his Rule 1925(b) statement, Appellant timely filed it on May 11, 2020. Appellant presents the following questions for our review:

1. Did not the lower court err in granting the Commonwealth's motion in limine to preclude the admission of any expert testimony or report from Dr. Guzzardi and any evidence or cross-examination regarding [Lowry's] DUI case and internal affairs investigation, thereby violating [Appellant's] rights to present a defense and cross-examine witnesses as guaranteed by the Pennsylvania and Federal Constitutions?

2. Did not the lower court err in failing to instruct the jury that [Appellant] was justified by necessity under 18 Pa.C.S. § 503, as [Appellant's] actions of removing a firearm from the scene, so that [Lowry], an intoxicated and aggressive police officer, who adopted a fighting stance in response to monetary negotiations in the

_____

[3] At the waiver trial, the parties stipulated that Appellant was ineligible to possess a firearm because he had previously pled guilty to attempted murder at docket number CP-51-CR-1103791-2000. N.T., 11/15/19, at 18.

- 4 -

course of an alleged fender bender, would not be able to do harm to him or others was justified under 18 Pa.C.S. § 503.

Appellant's Brief at 4.

In Appellant's first claim of error, he alleges that the trial court erred when it granted the Commonwealth's motion *in limine*. Appellant's Brief at 12. The motion sought to preclude Appellant from introducing expert testimony regarding Lowry's level of intoxication, his ability to perceive the events as they transpired, and his ability to recall those events at a later time. Commonwealth's Motion *in Limine* to Preclude Evidence, 11/28/18. The motion also sought to preclude the admission of evidence concerning procedures of the internal affairs department, the special investigation unit of the District Attorney, the disposition of Lowry's case, and any disciplinary action taken against Lowry. *Id*.

Our standard of review is well established:

When ruling on a trial court's decision to grant or deny a motion *in limine*, we apply an evidentiary abuse of discretion standard. A trial court has broad discretion to determine whether evidence is admissible, and a trial court's ruling regarding the admission of evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous.

*Commonwealth v. Belani*, 101 A.3d 1156, 1160 (Pa. Super. 2014) (citations and quotation marks omitted).

In the first part of his first question, Appellant alleges that the trial court erred in granting the motion *in limine* to exclude the testimony of Dr. Lawrence

- 5 -

Guzzardi ("Dr. Guzzardi"). Appellant's Brief at 17. Pennsylvania Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>
> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>
> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702. Expert testimony is not permitted on the issue of witness credibility because "[w]e have consistently maintained that a lay jury is capable of determining whether a witness is lying, and thus expert testimony is not permissible as to the question of witness credibility." *Commonwealth v. Alicia*, 92 A.3d 753, 760 (Pa. 2014).

In support of his appeal, Appellant posits that the trial court misunderstood the thrust of Appellant's argument. Appellant's Brief at 18. Appellant asserts that he sought to introduce the testimony of Dr. Guzzardi reflecting that due to Lowry's level of intoxication, "his perceptions, judgment, memory, and inhibitions would have been markedly affected." *Id*. (citing Expert Report, Exhibit C). Appellant further avers that Dr. Guzzardi "ultimately concluded that Lowry's 'recollections of the incident must be

considered unreliable and distorted … they cannot be considered reliable.'" *Id*. (citing Trial Court Opinion, 7/17/20, at 5-6; Exhibit C).

Appellant argues that the trial court improperly conflated credibility and reliability. Appellant's Brief at 18. Appellant suggests that Dr. Guzzardi's testimony would have discussed whether Lowry's recollections could be reliable. *Id*. Specifically, Dr. Guzzardi would have testified that Lowry must have imbibed more alcohol than he admitted; if Lowry's BAC was .18 at 5:23 a.m., it would have been higher at the time of the incident, and the higher the BAC, "the more likely, from a scientific standpoint, that Lowry cannot accurately recall events." *Id*. at 19. Appellant contends that Dr. Guzzardi's testimony also would have highlighted that Lowry's memory would have been impaired, thereby supporting the proposition that Lowry was likely belligerent and a threat to Appellant. *Id*.[4]

_____

[4] Appellant argues that Dr. Guzzardi's proposed testimony is based on specialized knowledge that is not possessed by the layperson. Appllant relies upon **Commonwealth v. Uhrinek**, 544 A.2d 947 (Pa. 1988), in support of his argument. Appellant's Brief at 20-21. In that case, the appellant had struck the decedent with his car. The appellant argued that the accident was caused by the decedent's intoxication. The trial court did not allow evidence of the decedent's intoxication. **Uhrinek**, 544 A.2d at 949. On appeal, our Supreme Court held that

> [t]he trial court's refusal to permit the appellant to introduce evidence of the decedent's intoxication, where the appellant was prepared to support his theory with expert testimony, prevented him from challenging the causal connection between his conduct and the accident, a direct connection which the Commonwealth must prove beyond a reasonable doubt.

Appellant has failed to show that the trial court abused its discretion when it granted the Commonwealth's motion *in limine* to preclude Dr. Guzzardi's expert testimony. As the trial court properly noted, Dr. Guzzardi's ultimate conclusion, that Lowry's recollections were unreliable, is an overt assessment of Lowry's credibility and is prohibited under Pennsylvania law. Trial Court Opinion, 7/17/20, at 7 (citing *Alicia*, 92 A.3d at 760). Indeed, "expert testimony will not be permitted when it attempts in **any way** to reach the issue of credibility, and thereby usurp the function of the factfinder." *Commonwealth v. Delbridge*, 855 A.2d 27, 42 (Pa. Super. 2003) (emphasis added). *See also Commonwealth v. Crawford*, 718 A.2d 768, 773 (Pa. 1998) (finding that expert's testimony that a witness's memories of an event could not be accurate was an "inadmissible assessment of [the witness's] credibility."). We also note that the intoxicating effect of alcohol is known and recognized by the average lay person. We have held that "expert testimony is not necessary in a DUI-alcohol case … the Commonwealth may present any form of proof, including the defendant's

---

*Id*. at 952. Although the **Uhrinek** Court discussed the fact that the appellant's evidence regarding the decedent's intoxication was supported by expert testimony, the holding in that case was specific, stating, "[W]e hold that evidence of a deceased pedestrian's intoxication is admissible in a homicide by vehicle prosecution if relevant to the defendant's theory of the cause of the accident and if supported by expert testimony, even absent any showing that decedent was 'unfit to walk.'" *Id*.

J-S53003-20

behavior, the nature of the accident itself, and any other relevant evidence (which may or may not include blood alcohol tests.)." ***Commonwealth v. DiPanfilo***, 993 A.2d 1262, 1267 (Pa. Super. 2010).

As found by the trial court, Lowry was "indisputably inebriated"[5] during the incident, and "the intoxicating effects of alcohol are widely and commonly understood, and there was nothing unique about Lowry's intoxicant or the underlying facts that required an expert's scientific, technical, or other specialized knowledge." Trial Court Opinion, 7/17/20, at 8, 9 (citing Pa.R.E. 702 and ***Commonwealth v. Griffith***, 32 A.3d 1231, 1238 (Pa. 2011) (acknowledging that "in some [DUI] cases, depending on the specific facts and circumstances, expert testimony may be helpful," but the use of expert

_____

[5] In the instant case, the evidence of Lowry's intoxication was presented to the jury. As the trial court noted:

> Moreover, this court determined that the proposed expert testimony was simply not necessary to show "how intoxicated [Lowry] really was," as nothing about the underlying facts was beyond the understanding of a lay juror. It was undisputed that Lowry consumed several alcoholic drinks before the underlying incident. In his statement to Internal Affairs, Lowry admitted to drinking "a bucket of iced beers and a few shots of whiskey." (N.T. 11/13/19 at 134). At the conclusion of the underlying episode, Lowry was arrested for a suspected DUI. (Id. at 90). Later, he submitted to a breathalyzer test, which revealed a .18 BAC. (Id. at 140-41). Moreover, the Commonwealth was willing to stipulate that nearly three hours after the underlying incident, Lowry's BAC was .18—more than twice the legal limit. See (Comm. Mot. at 5 n.2); 75 Pa.C.S.A. § 3802(a)(2).

Trial Court Opinion, 7/17/20, at 8.

testimony is not required to establish a defendant's inability to drive safely.")).

Appellant has failed to show that the trial court abused its discretion when it granted the Commonwealth's motion *in limine* to preclude the expert testimony of Dr. Guzzardi.

In support of the second part of his first question, Appellant argues that the trial court erred when it granted the Commonwealth's motion *in limine* seeking to exclude evidence of procedures of the department of Internal Affairs, the special investigation unit of the District Attorney's Office, the disposition of Lowry's DUI case, and any disciplinary action taken against Lowry. As discussed, the admission of evidence is committed to the discretion of the trial court and will not be overturned unless the trial court has abused that discretion. ***Belani***, 101 A.3d at 1160.

Appellant asserts that he needed to call several witnesses to testify regarding the "Philadelphia Police disciplinary ladder." Appellant's Brief at 22. He sought to call Lieutenant Flacco, who oversees misconduct and disciplinary actions. ***Id***. He also wanted to call an individual from the District Attorney's office to show that it is a common belief that officers with DUI charges are accepted into a diversionary program, and those with more "serious" DUI charges are not. ***Id***. at 22-23. Appellant also averred that the trial court erred in placing limitations on Appellant's ability to cross-examine a sergeant from the Internal Affairs division because he wanted to challenge Lowry's testimony as well as the sergeant's failure to investigate the incident

"including the almost complete reliance on a recitation of the facts by [Lowry] himself, as opposed to reviewing any secondary or independent evidence." *Id*. at 24-25.

Appellant makes numerous allegations of bias and failure to properly investigate the case against Lowry. Appellant's Brief at 22-25. These allegations, however, are based upon Appellant's belief that the "arresting officers probably have a pretty good idea of what happens to an officer if arrested for different offenses." *Id*. at 21. Appellant further posits that:

> the knowledge that the more severe DUI offenses or other charges results in more severe consequences are necessary to show motive and bias in favor of [Lowry] by the responding officers, which explains the failure to investigate, the failure to document witnesses, the failure to perform field sobriety tests, and the failure to bring [Lowry] to the PDU in a reasonable amount of time, thereby lowering his blood alcohol level and ensuring his acceptance into a diversionary program.

Appellant Brief at 22. Appellant argues that "it is [Appellant's] belief that "the officers that investigated were not looking to discover the truth about the events that night and were actively seeking to limit the culpability of [Lowry] because he is an officer."[6] *Id*. at 25. Appellant also makes the bold statement

---

[6] Appellant states that there is "ample evidence" *inter alia*, "in the behavior of the responding officers, and the investigation by the Pennsylvania State Police that the officers failed to properly investigate, treated [Lowry] differently than [Appellant] and failed to follow proper procedure, all of which resulted in a more favorable outcome for [Lowry] than [Appellant]." Appellant's Brief at 26. Appellant fails, however, to set forth the ample evidence. To the extent Appellant argues that the failure to administer a field sobriety test and the failure to have Lowry's blood tested within a reasonable

that the fact that Lowry was charged only with a DUI strengthens Appellant's "argument that the strategy of minimization by law enforcement and [Lowry] gave [Lowry] a motive to lie and law enforcement a motive to not do its job properly which resulted in unjustified charges against [Appellant]."[7] Appellant's Brief at 29-30.

The trial court excluded the information Appellant sought to enter into evidence, finding that it was "unsubstantiated, collateral, and wholly irrelevant." Trial Court Opinion, 7/17/20, at 10. We agree.

Although it is well established that a criminal defendant has a right to be confronted with the witnesses against him as set forth in both United States and the Pennsylvania Constitutions, this right is not without limitations. **Commonwealth v. Guilford**, 861 A.2d 365, 370 (Pa. Super. 2004). In **Guilford**, we found that the trial court did not abuse its discretion where the trial court precluded cross-examination of a witness about whether that witness was under the influence of drugs when he testified at the appellant's

_____

time, Officer Payeski testified that the Philadelphia Police Department does not perform field sobriety tests and that no one was trained to do so. N.T. (Trial), 11/13/19, at 120. Further, Lowry testified that in the instant case, his blood was not drawn until 5:30 in the morning, three hours after the initial incident. He admitted that blood alcohol level lowers as time passes after an individual has stopped drinking. **Id**. at 141-142. It is unclear from the record why there was a three-hour delay, but Appellant has not shown that the delay was the result of an attempted cover-up by the Philadelphia Police Department.

[7] Appellant does not specify which charges brought against him were unjustified.

preliminary hearing. *Id*. at 369. Specifically, we held that "the mere fact that [the witness] was under the influence of drugs or alcohol on [the date of the appellant's preliminary hearing] does not, without other evidence, tend to establish or demonstrate that [the witness] had a motive to fabricate his testimony at trial." *Id*. at 369-370. Similarly, in ***Commonwealth v. Bright***, 420 A.2d 714 (Pa. Super. 1980), the appellant, who was convicted of assault and resisting arrest, alleged that the trial court erred in precluding his cross-examination of the arresting officer about his knowledge of the use of unnecessary force in order to establish a motive on the officer's part to fabricate testimony against the appellant. We held that "without an evidentiary basis showing unnecessary force and/or disciplinary proceedings, such a general consideration or motive is remote and collateral." *Id*. at 715. The holding in ***Bright*** applies to the instant case as well.

Although Appellant maintains that the responding officers were biased towards Lowry, there is no factual basis to support that claim. As the trial court noted,

> Officers Payeski and Eiser responded to the scene after [Barkley],[an] independent witness, called 911. The officers arrested Appellant and Lowry and recommended criminal charged for both men. Thus, there is no basis, beyond conjecture and suspicion, to insinuate wrongdoing on the part of the responding officers, and there is no conceivable basis to find that the officers' conduct resulted in unjustifiable charges against [Appellant].

Trial Court Opinion, 7/17/20, at 12. Indeed, as the Commonwealth argues, "Although [Lowry] was a law enforcement officer–albeit not an employee of

- 13 -

the Philadelphia Police Department–any allegation of bias based on this fact would apply generally to any officer who arrests another, and is therefore remote and collateral." Commonwealth's Brief at 14 (citing **Bright**, 420 A.2d at 715).

Moreover, we agree with the trial court's assessment that the evidence proffered by Appellant was not relevant. Pennsylvania Rule of Evidence 401 sets forth the following:

Evidence is relevant if:

(a)   it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b)   the fact is of consequence in determining the action.

Pa.R.E. 401. Evidence that is not relevant is not admissible. Pa.R.E. 402.

The trial court set forth the following cogent analysis:

In the case at bar, Appellant was charged with theft, receiving stolen property, and various charges under the Uniform Firearms Act. Each charge required the Commonwealth to prove that, on May 15, 2017, Appellant exercised unlawful control over Lowry's firearm. Neither an officer's general knowledge of the consequences of police misconduct, the disposition of Lowry's DUI charge, the thoroughness of the Pennsylvania State Police Internal Affairs investigation, nor the specifics of diversionary programs have any conceivable bearing on whether Appellant knowingly possessed an illicit firearm. Thus, the aforementioned evidence was wholly irrelevant …

Trial Court Opinion, 7/17/20, at 13. We agree. It is unclear how, even assuming all of the aforementioned evidence was admitted, it could be relevant to the question of whether Appellant unlawfully possessed a firearm.

It is well established that the trial court has "broad discretion to determine if evidence is admissible." *Belani*, 101 A.3d at 1160. The trial court did not abuse its discretion when it granted the Commonwealth's motion *in limine*.

In his second issue, Appellant posits that the trial court erred when it failed to instruct the jury that Appellant's actions were justified by necessity under 18 Pa.C.S. § 503. Appellant's Brief at 30. That section provides:

> **(a)** **General rule.--**Conduct which the actor believes to be necessary to avoid a harm or evil to himself or to another is justifiable if:
>
> > (1) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged;
> >
> > (2) neither this title nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and
> >
> > (3) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.
>
> **(b) Choice of evils.--**When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

18 Pa.C.S. § 503.

Our standard of review regarding jury instructions is well established:

> We review jury instructions for a clear abuse of discretion or an error of law. *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013). A jury charge is erroneous only if the charge as a whole is inadequate, not clear, or has a tendency to mislead or confuse a material issue. *Id.* The trial court properly gives a

jury instruction if there is an evidentiary basis on which the jury could find the element, offense, or defense that is the subject of the instruction. *See Commonwealth v. Washington*, 547 Pa. 563, 692 A.2d 1024, 1028 (1997) ("[J]ury instructions regarding particular crimes or defenses are not warranted where the facts of the case do not support those instructions").

*Commonwealth v. Hall*, 199 A.3d 954, 963 (Pa. Super. 2018).

In order to be entitled to an instruction on justification by necessity as a defense to a crime charged, Appellant must offer evidence to show:

>   (1)    that (he) was faced with a clear and imminent harm, not one which is debatable or speculative;
>
>   (2)    that (he) could reasonably expect that (his) actions would be effective in avoiding this greater harm;
>
>   (3)    that there is no legal alternative which will be effective in abating the harm; and
>
>   (4)    that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.
>
>   As with any offer of proof, it is essential that the offer meet a minimum standard as to each element of the defense so that if a jury finds it to be true, it would support the affirmative defense-here that of necessity. This threshold requirement is fashioned to conserve the resources required in conducting jury trials by limiting evidence in a trial to that directed at the elements of the crime or at affirmative defenses raised by the defendant. Where the proffered evidence supporting one element of the defense is insufficient to sustain the defense, even if believed, the trial court has the right to deny use of the defense and not burden the jury with testimony supporting other elements of the defense.

*Commonwealth v. Billings*, 793 A.2d 914, 916 (Pa. Super. 2002) (quoting

*Commonwealth v. Capitolo*, 498 A.2d 806 (Pa. 1985)). As set forth above,

if the appellant failed to satisfy any of the four elements necessary to receive

a jury instruction on necessity, the trial court may deny giving the instruction. **Billings**, 793 A.2d at 916. Further, it is Appellant's burden to proffer sufficient evidence for each of the **Capitolo** factors. **Commonwealth v. Manera**, 827 A.2d 482, 485 n.7 (Pa. Super. 2003) ("Because justification is an affirmative defense, the defendant has the burden of asserting an appropriate offer of proof in order to be entitled to a jury instruction on justification.").

Appellant contends that he satisfied each of the prongs. As to the first prong, Appellant avers that:

> [A]ppellant was faced with a clear and imminent harm. He was in a situation where he was confronted with a heavily inebriated and aggressive combatant that had access to a loaded gun. Appellant's concern was that [Lowry] because of his drunken state, who already had demonstrated a lack of judgment by not calling the police to settle a simple dispute over an alleged fender bender, would use the gun against him or shoot some other third party on the street with a wayward bullet.

Appellant's Brief at 33. The record does not support Appellant's contention relating to the first prong.

The trial court set forth the following discussion of the first prong relating to imminent harm.

> In the case at bar, there was absolutely no basis to find that Appellant was entitled to an instruction on justification by necessity. There was no clear and imminent danger that required Appellant to open Lowry's car door and take his weapon. Even if a fight was imminent–and this court does not concede that it was–Lowry's use of the firearm was not. The weapon was holstered, on the floor of his vehicle, and behind a closed door. (N.T. 11/13/[19] at 127-28). Lowry did not have immediate access to the weapon, and he did not reach for it or threaten to retrieve it. (<u>Id</u>.). The firearm was not in play (and the two men did not come to blows) until Appellant "circled" around Lowry, opened his

- 17 -

vehicle and stole the firearm.  (Id. at 52-54, 127-28).  The fact that Lowry could have conceivably or hypothetically tried to use his weapon is not enough to find that Appellant was "faced with clear and imminent harm."  See Billings, 793 A.2d at 916 (finding insufficient evidence that defendant faced clear and imminent harm to warrant jury instruction on justification defense to VUFA charges, the defendant took a gun from his former paramour's home because he feared it might be used against him).

Trial Court Opinion, 7/17/20, at 14-15.  The trial court's conclusion is based on evidence of record.  We find that it did not abuse its discretion or commit an error of law when it refused Appellant's request for a jury instruction on justification because Appellant has failed to demonstrate that he was faced with clear and imminent harm.  ***See Commonwealth v. Merriwether***, 555 A.2d 906, 911 (Pa. Super. 1989) (finding that trial counsel was not ineffective for failing to pursue a defense of justification where the appellant was convicted for a violation of the Pennsylvania Uniform Firearms Act and had allegedly received threats from individuals he testified against in an unrelated murder trial because threats do not constitute clear and imminent harm.).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/1/21